**Ricky B. GURLEY, Appellant,**

v.

**MISSOURI BOARD OF PRIVATE INVESTIGATOR EXAMINERS, et al., Respondents.**

**No. SC 91741.**

Supreme Court of Missouri, En Banc.

March 6, 2012.

Jay Barnes, Barnes & Associates, Jefferson City, for Ricky B. Gurley.

Kevin Hall, Attorney General's Office, Jefferson City, for Missouri Board of Private Investigator Examiners.

Anthony E. Rothert and Grant R. Doty, ACLU Organization, St. Louis, Stephen Douglas Bonney, ACLU Organization,

Kansas City, for the American Civil Liberties Union of Eastern Missouri.

WILLIAM RAY PRICE, JR., Judge.

## I. Introduction

In 2007, the Missouri General Assembly enacted a series of statutes regulating the private investigator profession. *See* sections 324.1100 to 324.1148.[1] Appellant Rickey Gurley applied for licensure as a private investigator pursuant to the statutory scheme. The Board of Private Investigator Examiners initially denied Gurley's application, but later the Administrative Hearing Commission ("AHC") ordered the board to grant Gurley a license.

Despite the fact that Gurley eventually was awarded a private investigator license, he continued to pursue a lawsuit he had filed against the board and its members in the Cole County circuit court. Gurley argued that the statutory scheme was unconstitutional on its face because it violated the free speech clauses of both the Missouri and the United States Constitutions. He also argued that his rights to procedural due process under the Fourteenth Amendment to the federal Constitution were violated when the board denied his application before giving Gurley a meaningful opportunity to be heard.

The circuit court dismissed Gurley's procedural due process claim as moot. It also dismissed Gurley's free-speech claims after concluding that the private investigator licensure statutes were not unconstitutional on their face.

The judgment of the circuit court is affirmed.

## II. Facts and Procedural History

Gurley has worked as a private investigator since at least 2003. He owns a share of Risk Management Research Investments, Inc., a company that conducts private investigations that was incorporated in July 2002. In 2003, Gurley obtained a license to practice as a private investigator from the city of Columbia, and he maintained that license until 2010. To do this, he was required to pay dues and to post an insurance bond. The final time Gurley renewed his Columbia private investigator license, he paid the required fee with the understanding that the license would be valid until September 30, 2010.

In 2007, the General Assembly decided that Missouri should regulate the private investigator profession on a statewide basis. It enacted House Bill 780, which made "engag[ing] in the private investigator business in this state unless such person is licensed as a private investigator" a class A misdemeanor. Section 324.1104.1;[2] section 324.1148.[3] The stat-

---

1. Citations are to RSMo Supp. 2009 unless otherwise noted. In 2011, the General Assembly amended the statutory scheme found in sections 324.1100 to 324.1148 to extend to the regulation of "private fire investigators." *See* 2011 Mo. Legis. Serv., H.B. 464. To avoid confusion, the 2009 version of the statutes, which was in effect at the times relevant to Gurley's case and which did not extend to the regulation of private fire investigators, is cited and quoted throughout this opinion. Because the Court's decision turns on the proper construction of the phrase "private investigator business," this opinion does not affect the operation of the statutory scheme to the extent that it regulates private fire investigators.

2. "Unless expressly exempted from the provisions of sections 324.1100 to 324.1148 ... [i]t shall be unlawful for any person to engage in the private investigator business in this state unless such person is licensed as a private investigator under sections 324.1100 to 324.1148...." Section 324.1104.1.

3. "Any person who violates sections 324.1100 to 324.1148 is guilty of a class A misdemeanor. Any second or subsequent violation of sections 324.1100 to 324.1148 is a class D felony." Section 324.1148.

ute makes repeat incidents of unlicensed practice class D felonies. *See* section 342.1148. The 2007 legislation also created a state agency called the "Board of Private Investigator Examiners." *See* section 324.1102.[4] Anyone wishing to become licensed by the state of Missouri to practice as a private investigator must apply to the board. *See* section 324.1108.[5] Agency rules establishing the procedures for applying to the board became effective in early 2010.

Gurley submitted an application to the board for a Missouri private investigator license in March 2010. He continued working as a professional private investigator and operating his business while his application was pending. On April 5, 2010, a board representative telephoned Gurley to inform him that the board wished to schedule a conference with him regarding his application. Gurley asked the representative why the conference was necessary and whether there were any problems with his application, but the board representative refused to give Gurley any further information. Gurley agreed to meet with the board on April 12, 2010.

At the conference, members of the board told Gurley that his application for a private investigator license would be denied because he had violated the federal Driver's Privacy Protection Act ("DPPA")[6]. The board alleged that several blog entries posted by Gurley in November and December 2009 violated the DPPA because they contained other individuals' personal information that Gurley had obtained from Missouri driver records. No law enforcement agency had ever formally charged Gurley with violating the DPPA, however.

Gurley suspected that the board members had been predisposed to deny his application, and the board had not given him the opportunity to defend himself at the meeting. In addition, Gurley had a longstanding professional rivalry with the man who sat as the board's vice president.

The board's denial of Gurley's application became official the next day, April 13, 2010. On April 21, 2010, Gurley, as is permitted by statute, sought review of the board's decision in the AHC. Gurley also filed an eight-count petition against the board in the Cole County circuit court on June 1, 2010, seeking, among other things, a declaratory judgment that the board violated Gurley's procedural due process rights when it denied his license application. The petition also sought a declaratory judgment striking down the licensing scheme enacted by the General Assembly as a violation of the free speech clauses of the United States Constitution's First Amendment and article I, section 8 of the Missouri Constitution. The circuit court immediately ruled against Gurley on three counts of his petition, including the count relating to his procedural due process claim, but stayed judgment as to the remaining counts pending a decision by the AHC.

According to Gurley, his business suffered once word spread of the board's

---

4. "The 'Board of Private Investigator Examiners' is hereby created within the division of professional registration. The board shall be a body corporate and may sue and be sued." Section 324.1102.1.

5. "Every person desiring to be licensed in this state as a private investigator or private investigator agency shall make application therefore to the board of private investigator exam-

iners. An application for a license under the provisions of sections 324.1100 to 324.1148 shall be on a form prescribed by the board of private investigator examiners and accompanied by the required application fee." Section 324.1108.

6. 18 U.S.C. §§ 2721 to 2725 (2006).

denial of his application. He continued operating his business, however, and neither the board nor any other law enforcement agency took action to prevent Gurley from practicing as a private investigator. Meanwhile, on July 19, 2010, the Columbia city council repealed its entire private investigator licensing scheme. Five months later, in an order issued December 14, 2010, the AHC held that the board lacked cause to deny Gurley's license application and ordered that the license issue. On December 31, 2010, the circuit court dismissed the remaining counts of Gurley's petition, including his free speech claim.

Now Gurley appeals the decision of the circuit court, urging this Court to adjudicate his procedural due process and free speech claims despite his success in the AHC. Because Gurley questions the validity of Missouri's private investigator licensure scheme on constitutional grounds, this Court has exclusive appellate jurisdiction. *See* Mo. Const. art. V, sec. 3.[7]

## III. Standard of Review

 "A declaratory judgment provides guidance to the parties, declaring their rights and obligations or otherwise governing their relationship ... and generally may be granted when a court is presented with: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law." *City of Lake*

*Saint Louis v. City of O'Fallon*, 324 S.W.3d 756, 760 (Mo. banc 2010) (internal quotations and citations omitted). "When the trial court fails to make a declaration settling rights, as when it dismisses a petition without a declaration, a reviewing court may make the declaration." *Nicolai v. City of St. Louis*, 762 S.W.2d 423, 426 (Mo. banc 1988). "When there are no disputed facts, and the issue is a purely legal one, the reviewing court will declare the rights and duties of the parties." *Law v. City of Maryville*, 933 S.W.2d 873, 877 (Mo.App.1996).

 "An appellate court reviews a trial court's grant of a motion to dismiss *de novo.*" *City of Lake Saint Louis*, 324 S.W.3d at 759. "The issue of whether a statute is unconstitutional is a question of law subject to de novo review." *Ehlmann v. Nixon*, 323 S.W.3d 787, 788 (Mo. banc 2010). "Statutes are presumed to be constitutional." *Id.*

## IV. Analysis

### A. Free Speech Claims

While Gurley argues that the Missouri private investigator statute should be struck down on free speech grounds, he does not argue that the statute infringes on his own free speech rights. Indeed, Gurley concedes both that the state may regulate private investigators' business practices and that this particular statute is constitutional as applied to private investigators. Rather, Gurley argues that the statute is constitutionally deficient because it reaches much further than professional private investigators, requiring ordinary citizens to obtain licensure before engaging in all manner of protected First Amendment activity. In other words,

---

7. "The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity ... of a statute or provision of the constitution of this state." Mo. Const. art. V, sec. 3.

Gurley argues that the statute is invalid on its face because it is overbroad. *See United States v. Stevens,* ── U.S. ──, ──, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) ("[A] law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.") (internal quotation marks omitted).

Section 324.1104.1 declares it "unlawful for any person to engage in the private investigator business in this state unless such person is licensed as a private investigator...." "Private investigator business" is defined in section 324.1100:

> As used in sections 324.1100 to 324.1148, the following terms mean:
>
> (9) **"Private investigator business,"** the furnishing of, making of, or agreeing to make, any investigation for the purpose of obtaining information pertaining to:
>
> (a) Crimes or wrongs done or threatened against the United States or any state or territory of the United States;
>
> (b) The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation, or character of any person;
>
> (c) The location, disposition, or recovery of lost or stolen property;
>
> (d) Securing evidence to be used before any court, board, officer, or investigating committee;
>
> (e) Sale of personal identification to the public; or
>
> (f) The cause of responsibility for libel, losses, accident, or damage or injury to persons or property or protection of life or property.

Section 324.1100.

The crux of Gurley's argument is that subdivision (9) lacks a commercial element. Thus, Gurley argues that "private investigator business" includes numerous First Amendment-protected activities performed every day by most American citizens. He focuses especially on subdivision (9)(b), arguing that anyone who uses a social networking website to locate a former classmate or to search for a potential romantic partner is "making [an] investigation for the purpose of obtaining information pertaining to ... [t]he identity ... whereabouts ... or character of [a] person." Gurley also argues that the definition of "private investigator business" describes the work of any political volunteer conducting opposition research, any freelance reporter and any author.[8]

 Gurley is quite right that requiring prior government approval before engaging in so many speech-related activities by uncompensated volunteers would raise serious constitutional questions. But the Court need not confront those questions. "[T]he first step in overbreadth analysis is to construe the challenged statute." *Stevens,* 130 S.Ct. at 1587. "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *S. Metro. Fire Prot. Dist. v. City of Lee's Summit,* 278 S.W.3d 659, 666 (Mo. banc 2009) (internal quotation marks and citations omitted). That being said, "[i]t is presumed that the General Assembly would not pass laws in violation of the

---

**8.** An even more troubling possibility would be that licensure might be required for members of religious congregations volunteering to investigate candidates for leadership and other positions.

constitution." *Planned Parenthood of Kansas v. Nixon,* 220 S.W.3d 732, 742 (Mo. banc 2007). For this reason, "[a] narrowing construction is the preferred remedy in First Amendment cases." *Id.* at 741. "In determining claims of overbreadth, our construction of the statute is definitive and we are obliged to give it a construction which will render it valid, if possible." *Pollard v. Bd. of Police Comm'rs,* 665 S.W.2d 333, 341 (Mo. banc 1984).

The General Assembly chose to use the term "private investigator *business*" both in the operative section of the statute, section 324.1104(1), and the definitional section, section 324.1100(9). The word "business" in each of these sections limits the scope of private investigator-related activities listed in the definition. Black's Law Dictionary defines "business" as "[a] commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain." BLACK'S LAW DICTIONARY 226 (9th ed.2009). Use of the word "business" in both of these sections indicates that section 324.1100(9) includes within its sweep only investigations conducted by commercial entities.

Gurley contends that when construing a term defined by a statute, the Court may look only to the words appearing in the statutory definition. As such, he believes the interpretation of "private investigator business" is informed only by the words, "the furnishing of, making of, or agreeing to make, any investigation for the purpose of obtaining information...." Nowhere does the definitional text include "business" or any similar word. In essence, Gurley's interpretation assumes that the definitional language forces the Court to read the word "business" out of the term itself. But because the word "business" was used by the legislature in both section 324.1104(1) and section 324.1100(9), it can-

not be ignored and must be given its full meaning.

"When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment." *State v. Moore,* 303 S.W.3d 515, 520 (Mo. banc 2010). The test for determining whether a particular word should be given effect when interpreting a statute is whether that word is part of the "legislative enactment." For example, this Court's precedents clearly hold that giving effect to chapter, article or section headings is not appropriate because they "are mere arbitrary designations inserted for convenience of reference by clerks or revisors, who have no legislative authority, and are therefore powerless to lessen or expand the letter or meaning of the law." *Killeron v. Am. Bankers Ins. Co. of Florida,* 733 S.W.2d 442, 444 n. 4 (Mo. banc 1987). On the other hand, "the *title* of a statute is necessarily a part thereof and is to be considered in construction," if, "[b]y title to the act, [one] mean[s] the title as enacted by the legislature...." *Bullington v. State,* 459 S.W.2d 334, 341 (Mo.1970) (emphasis added). Likewise, the word "business" as it appears in sections 324.1100(9) and 324.1104(1) was incorporated into the statute by the legislature and, regardless of the fact that "business" appears nowhere in section 324.1100(9)'s definition, the word must be given its full effect.

The Court holds that "private investigator business," as it appears in sections 324.1100 to 324.1148, includes the furnishing of, making of, or agreeing to make the investigations elaborated in section 324.1100(9) only when done as part of a commercial enterprise carried on for profit or as part of a particular occupation habitually engaged in for livelihood or gain. Because none of the hypothetical unconstitutional applications suggested by

Gurley are authorized by the statute when it is so construed, the statute is not unconstitutionally overbroad.

## B. Procedural Due Process Claims

Because professional licenses are considered to be "property" for the purposes of the Fourteenth Amendment, procedural due process is required before the government may deprive anyone of his or her professional license. *See Stone v. Missouri Dept. of Health and Senior Serv.,* 350 S.W.3d 14, 27 (Mo. banc 2011). On the other hand, because no one has a property interest in a mere unilateral expectation, *see Daniels v. Bd. of Curators of Lincoln Univ.,* 51 S.W.3d 1, 6 (Mo.App. 2001), due process generally is not required before the denial of a new application for professional licensure. Gurley's case raises a somewhat different issue: When the state initially enacts a licensing requirement for a given profession, is procedural due process required before denial if the applicant already has been practicing in the profession, already owns a well-established business and already possesses a professional license issued by a municipal government?

Gurley admits that, because the AHC ordered the board to issue him a license and the board has complied, his procedural due process claims are moot. Nevertheless, Gurley argues that the Court has discretion to entertain those claims because the "public interest" exception to the mootness doctrine applies here. The public interest exception to mootness applies whenever a case presents an issue that (1) is of general public interest and importance, (2) will recur and (3) will evade appellate review in future live controversies. *City of Manchester v. Ryan,* 180 S.W.3d 19, 22 (Mo.App.2005).

Here, the Court does not have discretion to entertain Gurley's procedural due process claims because the issue presented fails the second prong of the test. Any assertion that the precise situation in which Gurley found himself will recur is purely speculative. Regulations implementing the statewide private investigator licensure statute became effective in early 2010, and it is now early 2012. There is no evidence to suggest that anyone engaged in the private investigator business prior to 2010 and who wished to become licensed by the state of Missouri has yet to work his or her way through the licensure process. The public interest exception to the mootness doctrine therefore is inapplicable here, and the Court declines to entertain Gurley's procedural due process claims.

## V. Conclusion

The circuit court correctly determined Gurley's procedural due process claims to be moot. It also correctly held Missouri's private investigator licensure statute to be constitutional. Accordingly, its judgment is affirmed.

All concur.