

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD78351 |
| | ) | |
| PETER O. BALDWIN, | ) | **FILED: March 29, 2016** |
| Respondent. | ) | |

### Appeal from the Circuit Court of Jackson County
### The Honorable Jack R. Grate, Judge

**Before Division Four: Alok Ahuja, C.J., Gary D. Witt, J., and Kathleen A. Forsyth, Sp. J.**

The State charged Peter Baldwin with driving while intoxicated in violation of

§ 577.010.[1]  Baldwin filed a Motion to Suppress evidence arising from the stop of his vehicle

and his subsequent arrest, on the basis that the arresting officer was acting outside his

jurisdiction.  The circuit court granted Baldwin's motion.  The State appeals, arguing that the

officer had authority to stop and arrest outside his jurisdiction under § 70.820.5, and that the

circuit court's suppression order was accordingly erroneous.  We reverse, and remand the case to

the circuit court for further proceedings.

### Factual Background

On the evening of December 6, 2012, City of Grandview Police Officer Matthew Earnest

observed Baldwin failing to stop at a stop sign, and travelling in the wrong lane of traffic.  The

---

[1]    Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised
Statutes of Missouri, as updated through the 2012 Cumulative Supplement.

stop sign was located at the intersection of Martha Truman and Grandview Roads, which is at the northernmost boundary of the City of Grandview. Baldwin continued through the intersection, thereby entering into Kansas City.

Officer Earnest followed Baldwin into Kansas City and activated his emergency lights approximately thirty seconds later. Baldwin signaled and pulled to the shoulder. Officer Earnest conducted an investigation, and ultimately arrested Baldwin for driving while intoxicated. At all relevant times, Baldwin and Officer Earnest were located within the boundaries of Jackson County.

The State charged Baldwin with driving while intoxicated. Baldwin moved to suppress the testimony of Officer Earnest, the results of field sobriety tests, Baldwin's refusal of a breathalyzer test, as well as any statements made by Baldwin at the time of his arrest, because Officer Earnest had conducted the stop in Kansas City, outside his employing jurisdiction of Grandview. The State responded that Officer Earnest had authority to conduct the stop and arrest under § 70.820.5. By written order, the circuit court found that Officer Earnest had no authority to conduct the stop and arrest under § 544.157, and granted Baldwin's Motion to Suppress. The court did not address the application of § 70.820.5. The State appeals.[2]

**Standard of Review**

"Where a trial court has granted a defendant's motion to suppress, we review the trial court's decision on appeal under an abuse of discretion standard. Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Avent*, 432 S.W.3d 249, 252 (Mo. App. W.D. 2014) (citations and internal quotation marks omitted). "Review is limited

---

[2] Section 547.200.1(3) permits the State to take an interlocutory appeal from "any order or judgment the substantive effect of which results in . . . [s]upressing evidence." *See also State v. Moad*, 294 S.W.3d 83, 86 (Mo. App. W.D. 2009).

2

to determining whether the decision is supported by substantial evidence." *State v. Stover*, 388 S.W.3d 138, 149 (Mo. banc 2012). While we give deference to the circuit court's factual findings, we review questions of law *de novo*. *State v. McClendon*, 477 S.W.3d 206, 212 (Mo. App. W.D. 2015) (citing *State v. Gaw*, 285 S.W.3d 318, 319-20 (Mo. banc 2009)).

## Discussion

In its sole Point, the State argues that the circuit court erred in suppressing the evidence because Officer Earnest had the authority to make arrests for violations of state law throughout Jackson County by virtue of § 70.820.5.

"'It is well established as a general rule that, in the absence of statute, municipal police officers have no official power to apprehend offenders beyond the boundaries of their municipality.'" *State v. Renfrow*, 224 S.W.3d 27, 31 (Mo. App. W.D. 2007) (quoting *City of Advance v. Md. Cas. Co.,* 302 S.W.2d 28, 31-32 (Mo. 1957)). Here, the State relies on § 70.820.5 to establish Officer Earnest's authority to effect Baldwin's arrest outside of Grandview's city limits.[3] Section 70.820.5 provides:

> In addition to the emergency response powers prescribed in subsection 1 of this section, any peace officer of a county of the first classification with a

---

[3] Although the State cited § 70.820.5 in its opposition to Baldwin's Motion to Suppress, the circuit court's suppression order limits its discussion to § 544.157, which provides in relevant part:

> Any law enforcement officer certified pursuant to Chapter 590 of any political subdivision of this state . . . in fresh pursuit of a person who is reasonably believed by such officer to have committed a felony in this state or who has committed, or attempted to commit, in the presence of such officer or agent, any criminal offense or violation of a municipal or county ordinance, or for whom such officer holds a warrant of arrest for a criminal offense, shall have the authority to arrest and hold in custody such person anywhere in this state. Fresh pursuit may only be initiated from within the pursuing peace officer's . . . jurisdiction and shall be terminated once the pursuing peace officer is outside of such officer's jurisdiction and has lost contact with the person being pursued. . . .

The circuit court found that Officer Earnest did not have arresting authority pursuant to § 544.157.1 because he did not engage in a "fresh pursuit" of Baldwin which originated in the City of Grandview. The State does not challenge this ruling on appeal.

charter form of government, or any peace officer of any political subdivision within any county of the first classification with a charter form of government, or any peace officer of any city not within a county, who has completed the basic peace [officer] training program pursuant to chapter 590 may arrest persons who violate any provision of state law within the boundaries of any county of the first classification or of any city not within a county.

"'This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue.' 'It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible.'" *State v. Jones*, 479 S.W.3d 100, 106 (Mo. banc 2016) (citations omitted). "If the language is unambiguous, this Court 'must give effect to the legislature's chosen language.' Only where the language is ambiguous will the Court resort to other rules of statutory construction." *Treasurer of State v. Witte*, 414 S.W.3d 455, 461 (Mo. banc 2013).

Here, the plain language of § 70.820.5 allows a peace officer to effect arrests outside of his or her employing jurisdiction if certain conditions are met: (1) the officer is employed by a first-class county with a charter form of government, a political subdivision within such a county, or a city not within a county; (2) the officer has completed the basic peace officer training specified in chapter 590; (3) the arrest is for a violation of state law; and (4) the arrest takes place within a first-class county or a city not within a county. The Eastern District interpreted § 70.820.5 in the same manner in *State v. Boyd*, 999 S.W.2d 276 (Mo. App. E.D. 1999). *Boyd* held that a peace officer employed either by a city within St. Louis County, or by the City of St. Louis, had authority under § 70.820.5 to arrest an individual in St. Louis County, so long as the arrest was made for a violation of state law, and the officer had received the training specified in chapter 590. *Id.* at 278.

Baldwin argues that § 70.820.5 is inapplicable for a number of reasons. First, he argues that if § 70.820.5 is interpreted to authorize officers to make traffic stops, then the statute would

4

be redundant of § 544.157 (which is quoted in note 3, above).  Sections 70.820.5 and 544.157 address different situations, however, and we see no reason why both statutes cannot be applied according to their plain language.  Section 544.157 gives authority to <u>all</u> peace officers in the State to pursue certain parties beyond the officer's jurisdiction, when engaged in a "fresh pursuit" initiated within the officer's jurisdiction.  Section 70.820.5, by contrast, only applies to certain peace officers, only authorizes arrests in certain locations, and is not limited to arrests made in conjunction with a "fresh pursuit."  The two statutes are not in conflict where § 70.820.5 grants greater arresting authority, to a more limited class of peace officers, in more limited locations.  There is no justification for requiring § 70.820.5 to yield to § 544.157.

Baldwin also relies on the heading of § 70.820 to argue that it only applies in emergency situations.  Baldwin's argument ignores the rule that "giving effect to chapter, article or section headings is not appropriate because they are merely arbitrary designations inserted for convenience of reference by clerks or revisors, who have no legislative authority, and are therefore powerless to lessen or expand the letter or meaning of the law." *Gurley v. Mo. Bd. of Private Investigator Examiners*, 361 S.W.3d 406, 413 (Mo. banc 2012) (citation and internal quotation marks omitted).  *Gurley* continues by observing that "'the *title* of a statute is necessarily a part thereof and is to be considered in construction,' if, '[b]y title to the act, [one] mean[s] the title as enacted by the legislature . . . .'" *Id.* (quoting *Bullington v. State*, 459 S.W.2d 334, 341 (Mo. 1970)).  *Bullington* makes clear that the "title" which may properly be considered in statutory construction is the title which Article 3, § 23 of the Missouri Constitution requires bills to contain.  The section heading on which Baldwin relies is not a "title" in this sense.

Even if it were appropriately considered, the section heading of § 70.820 states: "Authority of law enforcement officers or peace officers to respond to emergencies outside

5

jurisdiction – definitions – authority of certain peace officers – authority of federal law enforcement officers."[4] By stating that the section addresses the "authority of certain peace officers," *in addition to* the "authority of law enforcement or peace officers to respond to emergencies," the section title plainly indicates that it provides authority to peace officers in *non-emergency* situations. This is confirmed by the language of the statute itself. While § 70.820.1 provides authority to a broad range of law enforcement officials "to respond to an emergency situation outside the boundaries of the political subdivision from which such peace officer's authority is derived," subsection 5 begins by stating clearly that the arrest powers it grants to certain officers are "[i]n addition to the emergency response powers prescribed in subsection 1 of this section." While § 70.820.*1* is plainly limited to "emergency situation[s]," it is equally clear that § 70.820.*5* is not so limited. *See Boyd*, 999 S.W.2d at 278 (relying on § 70.820.5 to justify arrest in a non-emergency situation).[5]

Baldwin contends that, even if § 70.820.5 is potentially applicable, he was not actually stopped and arrested for state-law violations. At the suppression hearing, Officer Earnest testified that he observed Baldwin fail to stop at a stop sign and weave into the wrong lane of traffic. The State asked him if "both of these violations from your training and experience [are]

---

[4]     This full section heading appears in the official 2000 edition of the Revised Statutes of Missouri, and in the 1997 Session Laws. *See* 1997 Mo. Laws 1311, 1311. The section heading is abbreviated in Vernon's Annotated Missouri Statutes, and omits the phrase "authority of certain peace officers."

[5]     In his Brief, Baldwin contends that, if we interpret § 70.820.5 to apply to both emergency and non-emergency situations, the statute would violate the requirement of Article 3, § 23 of the Missouri Constitution that a bill contain no more than one subject. Baldwin did not make this argument in the circuit court, and we therefore do not address it. *See*, *e.g.*, *State v. Driskill*, 459 S.W.3d 412, 426 (Mo. banc 2015) ("To preserve a constitutional claim of error, the claim must be raised at the first opportunity with citation to specific constitutional sections."); *State v. Prine*, 456 S.W.3d 876, 881 (Mo. App. S.D. 2015) ("we will not 'convict the trial court of error on issues that were not presented below and raised for the first time here'" (citation omitted)).

6

state violations as well?" Officer Earnest responded "Yes, they are." Officer Earnest testified in similar fashion concerning the driving while intoxicated offense for which he arrested Baldwin:

Q. So it was an ordinance violation?

A. Initially, yes.

Q. But it's also a state violation operating a vehicle under the impairment of either alcohol or drugs?

A. Yes, it is.

Even if Officer Earnest's subjective awareness were relevant, he knew that Baldwin's actions violated *both* state law and municipal ordinances; there is no indication that he intended to stop Baldwin for violation of one set of laws and not the other.

More fundamentally, an officer's subjective reasons for making a stop or arrest do not control the legality of the detention. Missouri decisions make clear that subjective intentions are not controlling in gauging the legality of an arrest under the Fourth Amendment. "Constitutionally sound probable cause is not dependent upon the subjective intentions of the officer. 'Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" *State v. Lane*, 937 S.W.2d 721, 723 (Mo. banc 1997) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)).[6] Baldwin cites no authority which would justify us in applying a different rule to § 70.820.5. So long as the facts known to the officer, viewed objectively, provide probable cause to support a stop or arrest for a state-law violation, it is irrelevant whether the stopping or arresting officer had a specific state statute in mind at the time of his or her action. In this case, failing to stop at a stop sign, and driving in the wrong lane of

_____

[6] *See also State v. Mease*, 842 S.W.2d 98, 105-06 (Mo. banc 1992) (rejecting defendant's claim that arrest on felony nonsupport warrant was invalid because the arrest was actually motivated by police's desire to question defendant regarding a triple murder; "so long as the police do no more than they are objectively authorized and legally permitted to do, an officer's motives in making an arrest are irrelevant and not subject to inquiry").

7

traffic, constitute violations of §§ 304.015 and 304.351; similarly, driving while intoxicated is criminalized by § 577.010. If Officer Earnest had probable cause to believe these offenses had occurred, these offenses would justify Baldwin's stop and arrest under § 70.820.5.[7]

Based on the foregoing, we conclude that § 70.820.5 is potentially applicable to justify Officer Earnest's stop and arrest of Baldwin on December 6, 2012, and that the circuit court erred by failing to consider the applicability of § 70.820.5 before granting Baldwin's Motion to Suppress. On the existing record, it is clear that several of the elements necessary to rely on § 70.820.5 were established in this case: (1) Officer Earnest was employed by a political subdivision (the City of Grandview) located within a first-class county with a charter form of government (Jackson County); (2) Officer Earnest stopped and arrested Baldwin for conduct which would violate state law; and (3) the stop and arrest took place within a first-class county (Jackson County).[8]

---

[7]    Baldwin contends that the State failed to meet its burden of proving that he was stopped and arrested for state-law violations, because the State failed to cite specific statutes at the suppression hearing. The trial court and this Court can take judicial notice of the relevant state statutes, however; no specific evidence of the statutes' existence was required. *State v. McDonald*, 170 S.W.3d 535 (Mo. App. W.D. 2005), is not to the contrary. In that case, the State failed to present evidence to establish that a particular state statute *had been violated*; the issue was not the statute's existence. *Id.* at 539-40.

[8]    At the suppression hearing, the State argued that the circuit court "can take judicial notice that Jackson County is a county of the first class with a charter form of government." Baldwin did not respond to this contention, and the circuit court did not address it. Whether or not the circuit court took judicial notice of the status of Jackson County, we can do so on appeal. Prior cases have taken judicial notice of the status and population of Missouri cities and counties. *See*, *e.g.*, *State ex inf. Martin v. City of Independence*, 518 S.W.2d 63, 67 (Mo. 1974) (noting that Jackson County adopted a charter in the 1970 general election, to become effective on January 1, 1973, and taking judicial notice that prior to that time, "Jackson County operated as a classified county with a three-judge county court exercising both legislative and executive duties"); *Shelby Cnty. R-IV Sch. Dist. v. Herman*, 392 S.W.2d 609, 611 (Mo. 1965) (taking judicial notice that Clarence and Shelbina were fourth-class cities); *Kansas City ex rel. Barlow v. Robinson*, 322 Mo. 1050, 1058, 17 S.W.2d 977, 988 (Mo. banc 1929) (taking judicial notice that Kansas City had a population of more than 100,000, and a charter form of government); *Kindred v. City of Smithville*, 292 S.W.3d 420, 424 n.2 (Mo. App. W.D. 2009) (referring to the Official Manual of the State of Missouri to take judicial notice of Smithville's status as a fourth-class city). The most recent Official Manual reports Jackson County's status as a first-class county, the fact that its operations are governed by a county charter is recognized in at least one statute, § 483.015.2, and numerous other cases have noted Jackson County's status as a first-class county, or as a county with a charter form of

8

The remaining question is whether Officer Earnest had "completed the basic peace [officer] training program pursuant to chapter 590." At the suppression hearing, Officer Earnest testified that he had graduated from the Law Enforcement Training Institute in Columbia after completing 700 hours of training, and that he was POST certified. Because it did not address the applicability of § 70.820.5, however, the circuit court made no findings concerning whether Officer Earnest satisfied the training requirements contained in the statute. Because the trial court is free to believe or disbelieve any of Officer Earnest's testimony, we remand to the circuit court for resolution of this issue. *See Boyd*, 999 S.W.2d at 278 (remanding to circuit court for determination of same question).

In an amended Motion to Suppress, and in his Brief on appeal, Baldwin raises an additional argument to support suppression: that Officer Earnest lacked probable cause to believe that Baldwin had committed any traffic offenses prior to stopping Baldwin's vehicle. Because it found that Officer Earnest had no statutory authority to arrest Baldwin, the circuit court did not address whether probable cause existed to stop Baldwin in light of Officer Earnest's testimony and the other evidence at the suppression hearing (which included video from a dashboard camera in Officer Earnest's vehicle). Although Baldwin asks us to resolve this inherently fact-specific question in the first instance, we believe it is more appropriate to remand the probable cause issue to the circuit court.

government, or both. *See*, *e.g.*, *Jackson Cnty. v. State*, 207 S.W.3d 608, 612 n.2 (Mo. banc 2006); *Amaan v. City of Eureka*, 615 S.W.2d 414, 416 (Mo. banc 1981); *Bopp v. Spainhower*, 519 S.W.2d 281, 285 (Mo. banc 1975); *Foreclosure of Liens for Delinquent Land Taxes by Action in Rem v. Holton*, 428 S.W.3d 670, 674 n.4 (Mo .App. W.D. 2014); *State ex rel. Mason v. Cnty. Legislature*, 75 S.W.3d 884, 886 (Mo.App. W.D. 2002). We take judicial notice of the fact that Jackson County is, in fact, a first-class county with a charter form of government.

**Conclusion**

We reverse the circuit court's suppression order, and remand the case to the circuit court for further proceedings consistent with this opinion.

_____
Alok Ahuja, Chief Judge

All concur.