

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                )        *Opinion issued June 27, 2023*
                                )
           Appellant,     )
                                )
v.                               )        No. SC99886
                                )
NICHOLAS A. BARTON,        )
                                )
           Respondent.   )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

The Honorable Thomas Swindle, Judge

The state appeals the circuit court's order sustaining Barton's motions to suppress evidence obtained after his warrantless felony arrest. The motions, filed in two separate cases in the circuit court, were identical in every respect. Each asserts his arrest violated the Fourth Amendment and article I, section 15 of the Missouri Constitution because the arrest occurred in the city of Campbell (in Dunklin County), but it was effected by officers of the Poplar Bluff Police Department (which is in Butler County) and the offense for which Barton was arrested did not occur in the officers' presence. Because of this constitutional violation, Barton contends all evidence and statements gathered in the wake of that arrest must be suppressed in both of his cases.

The state contends that, even if an officer makes a warrantless felony arrest in violation of state law (i.e., the arresting officer was outside his or her jurisdiction), the Fourth Amendment and related state constitutional protections are not violated so long as the arrest is supported by probable cause and the arresting officer need not have witnessed the crime occur.

The circuit court sustained Barton's motions, the state appeals, and this Court has jurisdiction under article V, section 10 of the Missouri Constitution. The circuit court's decision is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.

**Factual and Procedural Background**

On January 9, 2021, Lieutenant Josh Stewart of the Poplar Bluff Police Department went to The Bottle Shop, a business located in Poplar Bluff, Missouri, to investigate a robbery that occurred there earlier the same day. The shop's owner told Lieutenant Stewart that two men wearing hoodies and masks entered the shop. One of them approached the owner, pointed a gun in his face, and demanded money from the register. The suspects then fled in a car the owner described as a dark blue or black Dodge Caliber with a blue front end. The officers reviewed security camera footage of the incident.

The Poplar Bluff Police Department posted several images of the vehicle on social media. Two days later, a resident of Campbell, Missouri, called the Poplar Bluff Police Department to report that his neighbor owned the vehicle in question and that it was located on West Monroe Street in Campbell.

2

Lieutenant Stewart contacted the Campbell Police Department and asked its officers to verify that the vehicle was at the West Monroe Street location and, if it was, to keep it under surveillance until he could arrive. The Campbell Police Department verified the vehicle was there, and a Campbell police officer stayed with it until Lieutenant Stewart and three other Poplar Bluff police officers arrived.

Lieutenant Stewart and the other officers arrived, spoke with the Campbell police officer at the scene, and then knocked on the door of the West Monroe residence where the vehicle was located. A woman answered the door. While Lieutenant Stewart and the woman were talking, two men arrived whose sizes and builds matched what was shown on the security camera footage from The Bottle Shop. One of the men was Nicholas Barton. A Poplar Bluff police officer[1] then arrested Barton and placed him in the back of a Campbell Police Department vehicle. After being notified of his *Miranda* rights, Barton waived those rights and confessed to being involved in The Bottle Shop robbery.

Barton was taken to the Poplar Bluff Police Department. There, he was interviewed by Detective Huddleston of the Butler County Sheriff's Office regarding another robbery in the area that occurred in June 2020 ("the June robbery"). Detective Huddleston read Barton his *Miranda* rights, which Barton again waived. Barton denied any involvement in the June robbery. Two days later, Detective Huddleston re-interviewed Barton. He again advised Barton of his *Miranda* rights, which Barton again waived. Barton then confessed to committing the June robbery.

---

[1] Lieutenant Stewart testified he was not the arresting officer, as he was still inside the residence speaking with the woman who answered the door.

Barton was charged in two separate cases for his involvement in The Bottle Shop robbery and the June robbery, respectively. Barton filed identical motions to suppress in each case ("the motion"), seeking to suppress any evidence obtained after the warrantless arrest on West Monroe Street in Campbell. The motion argued Barton's Fourth Amendment rights were violated because the arresting officer had no authority under Missouri law to make arrests outside his territorial jurisdiction, which was the city of Poplar Bluff. The one-and-a-half page motion set forth the names of the officers involved in the arrest and argued that, because those officers were all members of the Poplar Bluff Police Department (and none of them had been deputized by the Dunklin County Sherriff), they lacked statutory authority to arrest him in Campbell. The motion asserts neither the Campbell Police Department nor the Missouri State Highway Patrol was involved in the arrest, and, "as a result, this detention was unlawful in that the location of Campbell, Dunklin County, Missouri was outside of the jurisdiction of the Poplar Bluff Missouri Police Department."

The final two sentences of Barton's motion argue "this detention was without a warrant, and was without appropriate authority pursuant to the Missouri Constitution and Missouri Statute" and "the arrest and detention was illegal, unconstitutional and unreasonable, in that at the time of the claimed arrest and/or detention, it was made without legal justification." Following an evidentiary hearing, the circuit court sustained Barton's motions to suppress without explicit factual findings or other explanation. The state filed this interlocutory appeal.

4

**Standard of Review**

"A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). A ruling is clearly erroneous if, after review of the entire record, this Court is left "with the definite and firm impression that a mistake has been made." *Moore v. State*, 458 S.W.3d 822, 829 (Mo. banc 2015) (Wilson, J., dissenting) (quotation omitted). Moreover, "there must be substantial evidence to support the ruling." *State v. Norfolk*, 366 S.W.3d 528, 531 (Mo. banc 2012) (quotation omitted). In reviewing the record, "[t]his Court defers to the trial court's factual findings and credibility determinations and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Sund*, 215 S.W.3d at 723 (citation omitted). Lastly, whether particular conduct violates the Fourth Amendment is a question of law this Court reviews *de novo*. *Id.*

**Analysis**

Section 544.216[2] provides that a law enforcement officer in Missouri "may arrest on view, and without a warrant, any person the officer sees violating or who such officer has reasonable grounds to believe has violated any ordinance or law of this state, including a misdemeanor or infraction, ***over which such officer has jurisdiction.***" (Emphasis added). "It is well established as a general rule that, in the absence of statute, municipal police officers have no official power to apprehend offenders beyond the boundaries of their municipality." *State v. Baldwin*, 484 S.W.3d 894, 896 (Mo. App.

---

[2] All statutory references are to RSMo 2016 unless otherwise indicated.

2016). Indeed, the state does not dispute Barton's arrest violated state law because the arresting officer (a member of the Poplar Bluff Police Department) apprehended Barton in Campbell, which was outside the boundary of the officer's municipality.

But this does not end the inquiry. This Court has never applied an exclusionary rule to remedy a state law violation such as occurred here. Instead, the exclusionary rule Barton seeks to invoke is intended to remedy Fourth Amendment violations. Accordingly, Barton's motion claims the fact the arresting officer was outside the officer's jurisdiction and had no statutory authority to make the arrest – by itself – constitutes a violation of the Fourth Amendment. This Court disagrees.

Barton argues that, under *Virginia v. Moore*, 553 U.S. 164 (2008), an arrest by an officer outside the officer's jurisdiction violates the Fourth Amendment unless the officer witnessed the crime occurring and, from that observation, had probable cause to arrest the defendant. Because it is undisputed in this case that Barton's crimes were not committed in the arresting officer's presence, Barton claims that, under *Moore*, his arrest violated the Fourth Amendment. The state contends Barton seeks an unnecessary and unfounded expansion of the holding in *Moore*.

In *Moore*, two Virginia police officers stopped and arrested Moore for driving with a suspended license – a misdemeanor offense in Virginia. *Id*. at 166. The officers conducted a search incident to the arrest and found Moore was in possession of illegal drugs. *Id.* at 167. Moore moved to suppress the evidence of his drug possession, arguing his arrest violated the Fourth Amendment because driving with a suspended license was

6

not an arrestable offense under Virginia law and, therefore, Moore should not have been arrested and subsequently searched. *Id.* at 167-68.

In assessing Moore's argument, the United States Supreme Court found there was no historical precedent for Moore's position that the Fourth Amendment was intended to incorporate state statutes. *Id.* at 168-69. In the absence of historical precedent, the Supreme Court analyzed the search and seizure in terms of traditional standards of reasonableness "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 171. After weighing those factors, the Supreme Court found no support for Moore's Fourth Amendment claim. *Id.* "In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt" and "[t]he arrest is constitutionally reasonable." *Id.* The Supreme Court concluded that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 176.

As a result, there is no doubt *Moore* requires **both** probable cause **and** that the crime be committed in the officer's presence for an arrest to satisfy the Fourth Amendment. But *Moore* involved a **misdemeanor** offense. *Id.* at 166. As a result, the holding in *Moore* (and its requirement that the offense be committed in the arresting

7

officer's presence) does not apply – and this Court declines to extend that holding – to the present case.

When the warrantless arrest is for a felony not committed in the arresting officer's presence, the Fourth Amendment is satisfied so long as the arresting officer had probable cause to make the arrest.

> The cases construing the Fourth Amendment thus reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest.

*United States v. Watson*, 423 U.S. 411, 418 (1976); *see also State v. Olds*, 603 S.W.2d 501, 505 (Mo. banc 1980) (noting an "arrest without a warrant must be based on probable cause" which "exists where the facts and circumstances within the arresting officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense ***has been*** or is being committed" (emphasis added)); *State v. Wiley*, 522 S.W.2d 281, 287 (Mo. banc 1975) (noting the "lawfulness of the arrest without warrant, in turn must be based upon probable cause … that an offense ***has been*** or is being committed" (emphasis added) (quotation omitted)). Accordingly, this Court holds that, when the warrantless arrest is for a felony, the Fourth Amendment is satisfied if the arresting officer has probable cause

for the arrest, even when the felony was not be committed in the arresting officer's presence.[3]

Though it is inapplicable here, the reasoning in *Moore* supports this conclusion. *Moore* notes "an arrest based on probable cause serves interests that have long been seen as sufficient to justify the seizure." 553 U.S. at 173. Indeed, "[a]rrest ensures that a suspect appears to answer charges and does not continue a crime, and it safeguards evidence and enables officers to conduct an in-custody investigation." *Id.* Though these statements were made in the context of a misdemeanor arrest, there is no doubt the public has an even greater interest in the apprehension of suspected felons. For felony offenses, warrantless arrests based on probable cause are constitutionally reasonable. To the extent the circuit court's decision was based on Barton's claim that the Fourth Amendment is violated when an arresting officer was outside the officer's jurisdiction unless the officer personally observed the crime, the circuit court's decision is clearly erroneous.

Barton, however, contends that his motion fairly raised a second argument, i.e., that the officer who arrested him in Campbell lacked probable cause for the arrest and that this Court must presume the circuit court sustained Barton's motion on that ground as well. As a result, Barton claims this Court must affirm the circuit court's decision on this alternative ground even if the circuit court erred in finding for him on the principal

---

[3] While "warrantless arrests upon probable cause for felonies or misdemeanors may constitutionally b[e] authorized by statute," such an arrest "in the arrestee's home is impermissible absent consent to enter or exigent circumstances." *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 236 (Mo. banc 1982) (citing *Payton v. New York*, 455 U.S. 573, 590 (1980)).

ground discussed above. *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013) (concluding that "[e]ven if the stated reason for a circuit court's ruling is incorrect, the judgment should be affirmed if the judgment is sustainable on other grounds").

Having reviewed the motion and transcript of the evidentiary hearing and argument on Barton's motions, however, this Court is not confident Barton's alternative claim that there was no probable cause for his arrest was fairly raised in his motion or litigated at the evidentiary hearing. All of the facts alleged in Barton's motion pertain to whether the arresting officer had jurisdiction to arrest in Campbell. The proof adduced at the hearing and the overwhelming majority of counsels' arguments and the circuit court's remarks were directed at this claim.[4]

Barton claims the state was on notice that he also was claiming a lack of probable cause because his motions stated, at the end, that his arrest was "without appropriate authority pursuant to the Missouri Constitution and Missouri Statute[,]" and that the arrest "was illegal, unconstitutional and unreasonable, in that at the time of the claimed arrest and/or detention, it was made without legal justification[.]" But these conclusory statements, found in the summary of Barton's motions, are not sufficient to put the state

[4] Lieutenant Stewart answered questions regarding his status as a lieutenant with the Poplar Bluff Police Department, his travel to Campbell as part of the Barton investigation, whether he had been deputized in Campbell, his cooperation with the Campbell Police Department during the investigation, the presence of Campbell police officers on the scene, whether a Campbell police officer or a Poplar Bluff police officer actually made the arrest, and so on. After the state and defense completed their examinations of Lieutenant Stewart, the circuit court conducted its own inquiry. In doing so, the judge explained: "I'm trying to find out who arrested him, if he was arrested – Mr. Barton – and who physically handcuffed him and placed him in the Campbell patrol car."

10

on notice that probable cause was being disputed and would need to be proved. A careful review of the transcript shows there was no effort to make the sort of showing ordinarily required to refute a probable cause claim. A single reference by Barton's counsel that "there was no probable cause or no jurisdiction for the arrest" does not suggest otherwise. This statement and other isolated mentions of the phrase "probable cause" during the argument portion of the hearing occurred with no contextual reference to – let alone proof or argument concerning – what the arresting officer knew at the time of Barton's arrest. As a result, they fall short of convincing this Court that Barton actually intended to raise – and that the state was on notice to defend – any claim other than the claim discussed and rejected above, i.e., that the Fourth Amendment was violated because the arrest occurred outside the officer's jurisdiction and the crime did not occur in the officer's presence.

**Conclusion**

For the reasons set forth above, the circuit court's order sustaining Barton's motion to suppress is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.[5]

_____
Paul C. Wilson, Chief Justice

All concur.

---

[5]   The Court expresses no opinion as to whether there was or was not probable cause for Barton's arrest. Instead, if Barton pursues that claim on remand, the state is entitled to an opportunity to defend it and the circuit court then may make whatever disposition it concludes the evidence and the law require.