

# SUPREME COURT OF MISSOURI
## en banc

WILLIAM DIESER,               )       *Opinion issued October 4, 2016*

)

        Respondent/Cross-Appellant,   )

)

v.                             )      No. SC95022

)

ST. ANTHONY'S MEDICAL CENTER,  )

)

        Appellant/Cross-Respondent.   )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Michael D. Burton, Judge

William Dieser filed an action against St. Anthony's Medical Center alleging that St. Anthony's provided negligent medical care that caused him to develop a stage IV pressure ulcer. The jury ultimately awarded Mr. Dieser $883,000 in compensatory damages. On appeal, Mr. Dieser asserts that the trial court erred by entering a judgment without post-judgment interest because he was entitled to post-judgment interest pursuant to section 408.040.1.[1] Mr. Dieser further asserts that the trial court's application of section 538.300, to deny him post-judgment interest, violated his constitutional rights to equal protection, open courts, and a trial by jury. St. Anthony's cross-appealed, asserting multiple points of error.

---

[1] All statutory citations to section 408.040 are to RSMo Noncum. Supp. 2014. All other statutory citations are to RSMo Supp. 2013.

This Court finds that the trial court did not err in entering its judgment without post-judgment interest. While section 408.040.1 does provide that judgments shall accrue interest, it does so in the context of "the judgment balance as set forth in this section." Subsections 2 and 3 of section 408.040 then govern the accrual of post-judgment interest. But section 538.300 prohibits the application of subsections 2 and 3 of section 408.040 in medical negligence actions against health care providers. When the relevant statutes are read together, *in pari materia*, Mr. Dieser was not statutorily entitled to post-judgment interest pursuant to section 408.040.

Furthermore, the application of section 538.300 does not violate Mr. Dieser's constitutional rights. Mr. Dieser failed to preserve the equal protection argument he now raises on appeal because it was not raised before trial court, and the fact that section 538.300 prevented him from obtaining interest on his judgment did not affect his access to the courts. Likewise, the trial court's application of section 538.300 did not violate Mr. Dieser's right to a trial by jury because it does not curtail the jury's determination of damages in that post-judgment interest has never been assessed by a jury.

On cross-appeal, St. Anthony's cannot establish that the cross-examination of an expert regarding the term "never event" affected the outcome of the case nor can it show that it was prejudiced by counsel's discussion of the burden of proof during *voir dire*. Additionally, no reversible error resulted from Mr. Dieser's testimony that St. Anthony's is a Catholic institution or from counsel's closing argument regarding acceptable medical care in the community. Finally, viewing the evidence in the light most favorable to the

verdict, the compensatory damages award was not excessive. Accordingly, the trial court did not abuse its discretion in overruling the motion for remittitur of damages.

## Factual and Procedural Background

On January 28, 2008, Mr. Dieser was admitted to St. Anthony's for surgery to remove a pancreatic pseudocyst. Two days later, Mr. Dieser developed a pressure wound on his buttocks. The wound developed into a stage IV pressure ulcer extending from the surface of Mr. Dieser's skin to the bone. Surgery had to be performed to cut and remove dead tissue from the wound. Mr. Dieser was released from St. Anthony's on February 7, 2008.

Following his release, the dressings on Mr. Dieser's pressure wound had to be changed multiple times a day. While home health care nurses made weekly visits, the majority of the dressings were changed by Mr. Dieser's wife. To manage the pain during the dressings, Mr. Dieser's surgeon prescribed lidocaine to numb the area around the wound.

The wound initially healed in five months. Mr. Dieser later began experiencing severe pain at the wound site when bending over or sitting down. A plastic surgeon determined the pain resulted from a band of scar tissue that had formed as the wound healed. In October 2008, Mr. Dieser had a second surgery to remove the scar tissue and replace it with a skin graft taken from his thigh. The skin graft was only partially successful. By February 2009, the wound had completely healed.

In 2012, Mr. Dieser filed a medical negligence action against St. Anthony's. In his second amended petition, Mr. Dieser alleged that St. Anthony's negligently failed to

3

adequately follow its own policies, procedures, and protocols regarding pressure injury prevention when it allowed his body to be exposed to pressure sufficient to create the ulcer. St. Anthony's denied the allegations, and the case proceeded to trial.

The jury returned its verdict in favor of Mr. Dieser. It awarded him $33,000 for past economic damages, $750,000 for past noneconomic damages, and $100,000 for future noneconomic damages for a total of $883,000 in compensatory damages. Both parties filed post-trial motions regarding whether Mr. Dieser was entitled to post-judgment interest under section 408.040. The trial court entered its judgment without post-judgment interest.

Mr. Dieser appeals, and St. Anthony's cross-appeals.

**This Court Has Jurisdiction**

Prior to addressing the merits of Mr. Dieser's appeal, the Court must first determine whether it has jurisdiction. *Alumax Foils, Inc. v. City of St. Louis*, 939 S.W.2d 907, 910 (Mo. banc 1997). Article V, section 3 of the Missouri Constitution provides this Court with exclusive appellate jurisdiction in all cases involving the validity of a statute of this state. This Court's exclusive appellate jurisdiction "is invoked when a party asserts that a state statute directly violates the constitution either facially or as applied." *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. banc 2015). "The constitutional issue must be real and substantial, not merely colorable." *Id.*

In his jurisdictional statement, Mr. Dieser asserts that this Court has exclusive jurisdiction over this appeal because the trial court's application of section 538.300, to overrule his motion for post-judgment interest, violated his constitutional rights to equal protection, open courts, and a jury trial. St. Anthony's asserts that there is no basis for

4

jurisdiction in this Court because Mr. Dieser waived his constitutional challenges to section 538.300 by not asserting them at the earliest opportunity. In particular, St. Anthony's contends that Mr. Dieser waived his constitutional challenges by raising them in a post-trial motion instead of in a reply to the answer St. Anthony's filed. Under the facts and circumstances of this case, Mr. Dieser did not waive his constitutional challenges by raising them for the first time in a post-trial motion.

In its answer, St. Anthony's alleged, as an affirmative defense, that it intended "to rely upon and obtain the benefits of Chapter[] 538[.]" Mr. Dieser did not file a reply to the answer filed by St. Anthony's. Following the verdict, St. Anthony's filed a post-trial motion "to Apply Sections of Chapter 538 of the Missouri Revised Statutes." In its motion, St. Anthony's alleged that Mr. Dieser was not entitled to post-judgment interest because section 538.300 prohibits the award of post-judgment interest in medical negligence cases against health care providers. Mr. Dieser also filed a post-trial motion, which was titled "Plaintiff's Motion for Entry of Judgment Which Includes Post Judgment Interest." In his motion, Mr. Dieser alleged that he was entitled to post-judgment interest pursuant to section 408.040.1 and asserted, for the first time, that section 538.300's restriction on post-judgment interest violates his constitutional rights to equal protection, open courts, and a trial by jury. The trial court entered its judgment without post-judgment interest.

This Court has long held that "in so grave a matter as a constitutional question it should be lodged in the case at the earliest moment that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived." *Lohmeyer v. St. Louis Cordage Co.*, 113 S.W. 1108, 1110 (Mo. 1908), *overruled*

5

*on other grounds by City of St. Louis v. Butler Co.*, 219 S.W.2d 372 (Mo. banc 1949). Nevertheless, this Court has recognized that "there can be no fixed rule as to when or how or at what stage of the proceedings the [constitutional] question should be raised in each case." *Hohlstein v. St. Louis Roofing Co.*, 42 S.W.2d 573, 578 (Mo. 1931).

St. Anthony's asserts that Mr. Dieser should have raised his constitutional challenges in a reply because, if the defense relies upon a statute in its answer, "then the reply would be the first open door" to raise a constitutional challenge to the statute. *McGrath v. Meyers*, 107 S.W.2d 792, 794 (Mo. 1937). If the defendant grounds an affirmative defense on a statute that plaintiff contends is unconstitutional, "it would seem he should plead its unconstitutionality in the reply[.]" *Lohmeyer*, 113 S.W. at 1110; *see also Hanks v. Hanks*, 117 S.W. 1101, 1102 (Mo. 1909). It typically follows, therefore, that if a defendant asserts a statute as an affirmative defense, constitutional challenges to that statute should be raised in a reply.

Section 538.300, however, is not an affirmative defense under the circumstances of this case. An "affirmative defense" is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Black's Law Dictionary* 509 (10th ed. 2014). An "affirmative defense" is a procedural tool "that allows the defendant to defeat or avoid the plaintiff's cause of action and avers that even if the allegations of the petition are taken as true, the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid the legal responsibility alleged." *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012) (internal quotation omitted).

6

Section 538.300 does not permit St. Anthony's to avoid or defeat Mr. Dieser's medical negligence claim. Section 538.300 provides, in pertinent part, that "subsections 2 and 3 of section 408.040 shall not apply to actions under sections 538.205 to 538.230." Section 538.210.1 addresses actions "against a health care provider[2] for damages for personal injury or death arising out of the rendering of or the failure to render health care services[.]" Section 538.300, therefore, applies to medical negligence actions against health care providers such as St. Anthony's. Subsections 2 and 3 of section 408.040 address the accrual of post-judgment interest. It follows that section 538.300 does not permit a health care provider to avoid legal liability in a medical negligence action; rather, section 538.300 simply provides that subsections 2 and 3 of the post-judgment interest statute do not apply in medical negligence actions against health care providers. Because section 538.300 does not permit St. Anthony's to avoid or defeat the legal liability alleged by Mr. Dieser, it does not act as an affirmative defense in this case.[3]

Moreover, even if section 538.300 could be construed as an affirmative defense, St. Anthony's failed to properly plead it. "A pleading that sets forth an affirmative defense . . . shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense[.]" Rule 55.08. The pleading requirements for affirmative defenses serve to ensure that an opposing party is informed of and prepared to address the issues being

---

[2] Hospitals are included in the definition of "health care provider" for purposes of section 538.210.1. *See* section 538.205(5).

[3] At oral argument, counsel for St. Anthony's acknowledged that it was raising the medical malpractice provisions of chapter 538 as affirmative defenses "even though they're not really affirmative defenses" because "it's been the practice for years to raise [the medical malpractice provisions of chapter 538] as affirmative defenses."

7

raised by the defense. *Id.* at 383. Here, St. Anthony's simply stated that it intended "to rely upon and obtain the benefits of Chapter[] 538," which has many sections. St. Anthony's did not specifically identify section 538.300. Such a bare assertion fails to inform Mr. Dieser that section 538.300 would be an issue in the case. Accordingly, the pleadings filed by St. Anthony's were insufficient to assert section 538.300 as an affirmative defense.

Given that section 538.300 was neither an affirmative defense nor properly pleaded by St. Anthony's, a reply was not the earliest moment that good pleading and orderly procedure would allow Mr. Dieser's constitutional challenges to be raised. And while orderly and proper procedure typically results in constitutional issues being raised prior to post-trial motions, Mr. Dieser timely raised his constitutional challenges to section 538.300 under the facts and circumstances of this case.

This Court has reasoned that "[a]n attack on the constitutionality of a statute is of such dignity and importance that the record touching such issues should be fully developed and not raised as an afterthought in a post-trial motion or on appeal." *Land Clearance for Redevelopment Auth. of Kansas City, Mo. v. Kan. Univ. Endowment Ass'n*, 805 S.W.2d 173, 176 (Mo. banc 1991). Nevertheless, the purpose of requiring a constitutional question to be raised at the earliest opportunity is "to prevent surprise to the opposing party and accord the trial court an opportunity to fairly identify and rule on the issue." *Dodson v. Ferrara*, 491 S.W.3d 542, 552 (Mo. banc 2016).

The record reflects that, once St. Anthony's raised the application of section 538.300 in its post-trial motion, Mr. Dieser raised his constitutional challenges to section 538.300

8

in his post-trial motion. The trial court subsequently heard oral argument on whether the judgment should include post-judgment interest and took the matter under advisement. Following the hearing, St. Anthony's filed a written response to the constitutional issues raised in Mr. Dieser's motion. Consequently, St. Anthony's suffered no surprise by Mr. Dieser raising the constitutional challenges in a post-trial motion, and the trial court had a fair opportunity to identify and rule upon the constitutional issues. Therefore, the manner in which Mr. Dieser raised his constitutional challenges satisfies the purpose for requiring constitutional issues to be raised at the earliest opportunity. It follows that, under the facts and circumstances of this case, Mr. Dieser timely raised his constitutional challenges to the application of section 538.300.

Alternatively, St. Anthony's asserts that Mr. Dieser's constitutional challenges to the validity of section 538.300 are merely colorable. St. Anthony's bases its assertion solely on its belief that Mr. Dieser's constitutional claims lack merit. "In the context of the 'not merely colorable' test, the word 'colorable' means feigned, fictitious or counterfeit, rather than plausible." *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 52 (Mo. banc 1999). "One clear indication that a constitutional challenge is real and substantial and made in good faith is that the challenge is one of first impression with this Court." *Id.* This Court has not squarely addressed the constitutional validity of section 538.300. Mr. Dieser, therefore, raises sufficiently real and substantial constitutional claims to invoke this Court's

9

jurisdiction. Accordingly, this Court has exclusive appellate jurisdiction over this appeal.[4] Mo. Const. art. V, sec. 3.

**Section 408.040.1 Does Not Mandate Post-Judgment Interest on All Judgments**

In his first point, Mr. Dieser asserts that the trial court erred in overruling his motion for post-judgment interest because he was entitled to post-judgment interest under section 408.040.1, which he asserts mandates that all judgments accrue post-judgment interest. This Court reviews questions of statutory interpretation *de novo*. *Macon Cnty. Emergency Servs. Bd. v. Macon Cnty. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. banc 2011).

Mr. Dieser asserts that he is entitled to post-judgment interest because section 538.300 does not prohibit an award of post-judgment interest mandated by section 408.040.1. He argues that the prohibition in section 538.300 is only that "subsections 2 and 3 of section 408.040 shall not apply to" medical negligence actions against health care providers. Consequently, section 538.300 does not prohibit the application of section 408.040.1.

Section 408.040.1 provides that "[j]udgments shall accrue interest on the judgment balance . . . ." This language, read in isolation, might be construed to authorize post-

---

[4] The cross-appeal filed by St. Anthony's was transferred to this Court prior to opinion on the Court's own motion. Mo. Const. art. V, sec. 10.

judgment interest on all judgments, but Mr. Dieser's interpretation of section 408.040.1 is not supported when section 408.040 is read as a whole and together with section 538.300.

"In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *State ex rel. Evans v. Brown Builders Elec. Co.*, 254 S.W.3d 31, 35 (Mo. banc 2008) (internal quotation omitted). "The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other." *Id.*

Section 408.040.1 provides:

> 1. Judgments shall accrue interest on the judgment balance as set forth in this section. The **"judgment balance"** is defined as the total amount of the judgment awarded on the day judgment is entered including, but not limited to, principal, prejudgment interest, and all costs and fees. Post-judgment payments or credits shall be applied first to post-judgment costs, then to post-judgment interest, and then to the judgment balance.

The first sentence of section 408.040.1 instructs that judgments accrue interest on the judgment balance. The remainder of section 408.040.1 defines "judgment balance" and explains the order in which post-judgment payments and credits are to be applied. Section 408.040.1, therefore, mandates that post-judgment interest accrue on the "judgment balance," defines what the "judgment balance" is, and instructs on the application of post-judgment payments and credits.

More importantly, while section 408.040.1 does state that judgments shall accrue interest, it does so in the context of stating that judgments shall accrue interest "on the

11

judgment balance *as set forth in this section*." (Emphasis added). The first sentence of section 408.040.1, therefore, directs that post-judgment interest accrues on the judgment balance as set forth elsewhere in section 408.040. Accordingly, under its plain terms, section 408.040.1 must be construed in accordance with section 408.040 as a whole.

In addition to subsection 1, there are two other subsections of section 408.040 that address post-judgment interest – subsections 2 and 3. They provide, in pertinent part:

> 2. In all nontort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until satisfaction be made by payment, accord or sale of property; all such judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear nine percent per annum until satisfaction made as aforesaid.

> 3. Notwithstanding the provisions of subsection 2 of this section, in tort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until full satisfaction. All such judgments and orders for money shall bear a per annum interest rate equal to the intended Federal Funds Rate, as established by the Federal Reserve Board, plus five percent, until full satisfaction is made. The judgment shall state the applicable interest rate, which shall not vary once entered.

Subsections 2 and 3, therefore, control the judgments on which interest is allowed and the rate at which interest accrues on those judgments. Accordingly, when read as a whole, section 408.040.1 provides that post-judgment interest accrues on the judgment balance as prescribed in subsections 2 and 3.

It follows that section 408.040.1 does not allow interest on all judgments but, instead, speaks to which part of the judgment interest accrues. It is subsections 2 and 3 that allow the accrual of interest on judgments. And because section 538.300 provides that

12

subsections 2 and 3 do not apply to medical negligence cases against health care providers, the accrual of post-judgment interest is prohibited in this case.[5] The trial court did not err in overruling Mr. Dieser's motion for post-judgment interest.

**Mr. Dieser Waived His Equal Protection Claim**

In his second point, Mr. Dieser asserts that the legislative prohibition on post-judgment interest in section 538.300 violated his constitutional right to equal protection. This Court reviews constitutional challenges to the validity of a statute *de novo*. *Hill v. Boyer*, 480 S.W.3d 311, 313 (Mo. banc 2016). "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *Id.* at 313-14. The party raising the constitutional challenge bears "the burden of proving the act clearly and undoubtedly violates the constitutional limitations." *Id.* at 314.

The equal protection clause of the Missouri Constitution provides that "all persons are created equal and are entitled to equal rights and opportunity under the law[.]" Mo. Const. art. I, sec. 2. In determining whether an equal protection violation has occurred, "this Court first determines whether the statute contains a classification that operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Ambers-Phillips v. SSM DePaul Health Ctr.*, 459

---

[5] It should also be noted that, by arguing that he was entitled to post-judgment interest under section 408.040, Mr. Dieser is asserting that the general post-judgment interest statute should control over the more specific medical negligence statute. It is a well-settled principle of statutory interpretation, however, that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Earth Island Inst. v. Union Elec. Co.*, 456 S.W.3d 27, 33 (Mo. banc 2015).

S.W.3d 901, 909 (Mo. banc 2015) (internal quotation omitted). "If the challenged law draws a distinction on the basis of a suspect classification or curtails the exercise of a fundamental right, then strict scrutiny applies." *Labrayere v. Bohr Farms*, 458 S.W.3d 319, 331 (Mo. banc 2015). "If there is no suspect classification or fundamental right at issue, a court will apply rational-basis review to determine whether the challenged law is rationally related to some legitimate end." *Amick v. Dir. of Revenue*, 428 S.W.3d 638, 640 (Mo. banc 2014).

Mr. Dieser concedes that victims of medical negligence are not a suspect class. *See Ambers-Phillips*, 459 S.W.3d at 912. Nevertheless, he asserts that strict scrutiny applies in this case because the legislative denial of post-judgment interest unreasonably impinges on his fundamental right to property. In particular, Mr. Dieser equates the denial of post-judgment interest to a taking, in that he has a property interest in his court judgment that should be free from any arbitrary governmental interference. This is not the equal protection claim Mr. Dieser raised before the trial court.

"An issue that was never presented to or decided by the trial court is not preserved for appellate review." *State v. Davis*, 348 S.W.3d 768, 770 (Mo. banc 2011). "[A] party seeking the correction of error must stand or fall on the record made in the trial court[;] thus it follows that only those objections or grounds of objection which were urged in the trial court, without change and without addition, will be considered on appeal." *Id.*

In his motion for post-judgment interest, Mr. Dieser alleged that "[d]enying post judgment interest to prevailing malpractice litigants while allowing it for all others has no rational basis, and interferes with fundamental property rights by lessening the value of the

14

verdict and judgment the longer it goes unpaid." Mr. Dieser did not object to the application of section 538.300 on grounds that it amounted to arbitrary governmental interference with his property interest in a court judgment. Mr. Dieser changed the grounds of his objection on appeal by arguing a taking had occurred and strict scrutiny applied. Consequently, Mr. Dieser failed to preserve the grounds for equal protection that he now raises on appeal.

## Section 538.300 Does Not Violate the Open Courts Provision

In his third point, Mr. Dieser asserts that the trial court violated the open courts provision of the Missouri Constitution by overruling his request for post-judgment interest. Article I, section 14 of the Missouri Constitution provides "[t]hat the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." "[S]tatutes that impose procedural bars to access of the courts are unconstitutional, and any law that arbitrarily or unreasonably bars individuals or classes of individuals from accessing our courts in order to enforce recognized causes of action for personal injury violates the open courts provision." *Weigland v. Edwards*, 296 S.W.3d 453, 461 (Mo. banc 2009) (internal citation, quotation, and emphasis omitted).

To establish an open courts violation, it must be shown that: (1) the "party has a recognized cause of action"; (2) "the cause of action is being restricted; and (3) the restriction is arbitrary or unreasonable." *Ambers-Phillips*, 459 S.W.3d at 909. "[T]he right of access to the courts set out in the open courts provision of the Missouri Constitution

15

means simply the right to pursue in the courts the causes of action the substantive law recognizes." *Id.* at 909-10 (internal quotation omitted).

Mr. Dieser asserts that section 538.300's restriction on post-judgment interest is an arbitrary and unreasonable interference with the value of a court's judgment because "[t]he fact that a dollar today is not the same thing as a dollar payable some years from now . . . is the matter of plainest fact[.]" *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 308 (Mo. banc 1992). The fact that section 538.300 prohibited the accrual of post-judgment interest in this case does not violate the open courts provision.

No procedural bar prevented Mr. Dieser from bringing his medical negligence claim in a Missouri court. Likewise, Mr. Dieser was not unreasonably or arbitrarily denied access to Missouri courts. Rather, Mr. Dieser brought his recognized, medical negligence cause of action in a Missouri court and obtained a favorable judgment. The fact that section 538.300 prevented him from obtaining post-judgment interest on that judgment does not affect his access to Missouri courts. Mr. Dieser's right to open courts, therefore, is not violated by the application of section 538.300.

### Section 538.300 Does Not Violate Mr. Dieser's Right to a Trial by Jury

In his final point, Mr. Dieser asserts that the trial court's failure to award him post-judgment interest violates his constitutional right to a trial by jury. Article I, section 22(a) of the Missouri Constitution provides "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate[.]" This means that Missouri citizens "are entitled to a jury trial in all actions to which they would have been entitled to a jury when the Missouri Constitution

16

was adopted in 1820." *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 638 (Mo. banc 2012) (internal quotation omitted).

Mr. Dieser contends that section 538.300's restriction on post-judgment interest violates his constitutional right to a trial by jury in light of this Court's opinion in *Watts*. In *Watts*, this Court held that the statutory cap on noneconomic damages in medical malpractice cases violated the plaintiff's right to a jury trial. *Id.* at 641. In finding the statutory cap unconstitutional, this Court explained that "Missouri law long has recognized that one of the jury's primary functions is to determine the plaintiff's damages." *Id.* at 639. This Court went on to reason that, "[l]ike any other type of damages, the amount of noneconomic damages is a fact that must be determined by the jury and is subject to the protections of the article I, section 22(a) right to trial by jury." *Id.* at 640. The Court concluded that the statutory noneconomic damages cap "directly curtails the jury's determination of damages and, as a result, necessarily infringes on the right to trial by jury when applied to a cause of action to which the right to jury trial attaches at common law." *Id.*

Mr. Dieser argues that section 538.300's restriction on post-judgment interest infringes on the right of a jury to determine damages just like the statutory cap held to be unconstitutional in *Watts*. Unlike the statutory cap in *Watts*, however, the restriction on post-judgment interest in section 538.300 does not curtail the jury's determination of damages.

Post-judgment interest "is not a measure of damages." 47 C.J.S. *Interest & Usury* § 61 (2014). In fact, post-judgment interest has never been assessed by the jury at common

17

law.  Rather, the right to post-judgment interest is purely statutory "because at common law there was no right to interest on any type of damages." *Id.* § 9.  It follows that, because an individual has no right to have a jury assess post-judgment interest at common law, section 538.300's restriction on post-judgment interest in medical negligence cases against health care providers does not directly curtail a jury's determination of damages.  Consequently, section 538.300 does not infringe on the right to a trial by jury.

**No Error from the Cross-Examination about "Never Events"**

In its first point on cross-appeal, St. Anthony's asserts that the trial court abused its discretion by permitting Dr. Diane Krasner to be cross-examined about stage III and IV pressure ulcers being classified as "never events."  The trial court has sound discretion with respect to the admissibility of evidence and over the extent and scope of cross-examination in civil actions.  *Nelson v. Waxman*, 9 S.W.3d 601, 603-04 (Mo. banc 2000).  "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration."  *Id.* at 604.

Prior to trial, St. Anthony's filed a motion *in limine* to prevent any witness from referencing a pressure ulcer as a "never event."  In its motion, St. Anthony's explained that the term "never event" references proposed guidelines from the Centers for Medicare and Medicaid Services and would inject evidence of insurance and collateral source payments into the case.  St. Anthony's also contended that the term should be excluded because the proposed guidelines did not exist at the time of Mr. Dieser's injury and should not be used to define the standard of care in this case.  The trial court overruled the motion *in limine*

18

but ordered that the term "never event" not be used during jury selection or in opening statements.

On the final day of trial, St. Anthony's called its expert, Dr. Krasner, who opined that Mr. Dieser's pressure wound was an unavoidable ulcer. During her direct examination, the following colloquy occurred:

> Q: Okay. And does the [National Pressure Ulcer Advisory Panel] have a definition for unavoidable ulcers?
>
> A: It does.
>
> Q: Okay. How long has it had that definition?
>
> A: It published its definition in 2010, which was a refinement of the definition that was put out by the Centers for Medicare and Medicaid in 2004.

On cross-examination, counsel for Mr. Dieser argued, outside the presence of the jury, that Dr. Krasner's reference to the 2004 definition by the Centers for Medicare and Medicaid Services opened the door for evidence regarding the term "never event." The trial court agreed and permitted cross-examination on the issue. The following colloquy occurred on cross-examination of Dr. Krasner:

> Q: And when you were on direct exam and you were explaining to this jury the basis for your opinion that this ulcer was not preventable, you mentioned the 2010 regulations – or not regulations, consensus statement?
>
> A: Correct, consensus statement.
>
> Q: Were based on a 2004 statement by the Centers for Medicare and Medicaid Services. Isn't that what you said, ma'am?
>
> A: No. I said that they included the definition that came from [the Centers for Medicare and Medicaid Services] for unavoidable.

19

Q: Right. And what you left out, ma'am, is that in 2007 or 2008, the Centers for Medicaid Services declared that Stage III or IV pressure ulcers acquired in the hospital are to be considered never events; isn't that correct?

A: No. That's – that's not correct.

Q: What's wrong with it?

A: Well, it's complicated.

Q: Answer me this one: Is a Stage III or IV hospital acquired pressure ulcer a never event?

Dr. Krasner went on to testify that a proposed regulation for the Centers for Medicare and Medicaid Services identified some conditions as "never events" that would not be reimbursed beginning in 2008. She further testified that, although pressure ulcers were not reimbursed, the "never event" language was not included in the final rule and the term is no longer used with respect to pressure ulcers.

St. Anthony's asserts that the trial court erred in permitting cross-examination of Dr. Krasner regarding the term "never event" because such testimony was legally and logically irrelevant and prejudiced St. Anthony's by changing the case into one of strict liability or negligence *per se*. In support of its assertion, St. Anthony's points out that, in closing, Mr. Dieser's counsel argued that a stage IV pressure ulcer "is what is known as a never event or a serious reportable event, and that's what happened here."

St. Anthony's, however, cannot establish that the cross-examination of Dr. Krasner resulted in reversible error. This Court will not "reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits

20

of the action." Rule 84.13(b); *see also Lewis v. Wahl*, 842 S.W.2d 82, 84-85 (Mo. banc 1992). "An erroneous evidentiary ruling warrants reversal . . . only when it affects the result or the outcome of the case[.]" *Lozano v. BSFN Ry. Co.*, 421 S.W.3d 448, 452 (Mo. banc 2014) (internal quotation omitted).

While St. Anthony's asserts that the "never event" testimony turned the case into one of strict liability or negligence *per se*, the jury was properly instructed as to the standard of care in this case.[6] This Court presumes that the jury follows the instructions given by the trial court. *State v. McFadden*, 369 S.W.3d 727, 752 (Mo. banc 2012); *see also Graves v. Atchison-Holt Elec. Co-op.*, 886 S.W.2d 1, 4 (Mo. App. 1994). The fact that Mr. Dieser's counsel used the term "never event" once in closing argument is insufficient to overcome the presumption that the jury followed the standard of care instruction given by the trial court. St. Anthony's, therefore, fails to establish that Dr. Krasner's testimony regarding "never events" affected the outcome of the case. Accordingly, the trial court did not commit reversible error when it permitted the cross-examination of Dr. Krasner regarding the term "never event."

**No Prejudice Resulted from Counsel's Discussion of the Burden of Proof**

In its second point, St. Anthony's asserts that the trial court erred in overruling its motion for a new trial because Mr. Dieser's counsel misstated the burden of proof during *voir dire*. "This Court reviews the overruling of a motion for a new trial for abuse of

---

[6] Instruction No. 6 reads: "The term 'negligent' or 'negligence' as used in this [sic] these instructions means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's employees' profession."

21

discretion." *Dodson*, 491 S.W.3d at 552. An abuse of discretion occurs when the trial court's "ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* "A new trial is available only when trial error or misconduct of the prevailing party incited prejudice in the jury." *Id.* The trial court also has "broad discretion" in "determining the propriety of questions during the voir dire." *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 866 (Mo. banc 1993). An individual alleging that the trial court abused its discretion during *voir dire* "has the burden of showing a real probability that he [or she] was thereby prejudiced." *State v. Nicklasson*, 967 S.W.2d 596, 608 (Mo. banc 1998) (internal quotation omitted).

"The purpose of voir dire is to determine which persons harbor bias or prejudice against either party which would make them unfit to serve as jurors." *Id.* Counsel is afforded wide latitude in questioning "the venire panel to determine preconceived prejudices which would prevent them from following the court's instructions." *Id.* (internal quotation omitted).

During *voir dire*, counsel for Mr. Dieser pursued a line of questioning about the applicable burden of proof. In doing so, counsel discussed the burden of proof in terms of percentages:

> Well, in a civil case, the jury can go back and talk about what is more likely true than not true, which is more likely true than not true. Just more likely, just a little bit more likely.
>
> If you believe what we're telling you is 51 percent more likely true and they are, you know, 49 or 52, you know, under the law, that's enough for us to win.
>
> . . . .

So you don't have to be 90 percent convinced what we're saying is true or 80 percent convinced or 70 or 60, just 51 percent more likely true than not true.

Is there anybody in the box who thinks that that is just not – that that is just a little too easy for us? That 51 percent ought to be – you know, it ought to be more like 60, 70, 80 percent in order to hold the hospital responsible for the injury that happened to this patient? Anybody believe it is too easy, 51 percent? I saw maybe some nods.

St. Anthony's objected to counsel's use of percentages. The trial court sustained the objection and told counsel to use the language set out in the jury instruction to discuss the burden of proof.

Counsel continued explaining the burden of proof:

I anticipate that the Judge is going to give you an instruction at the end of this case that tells you that if you believe certain propositions that will be submitted to you by A, B, C and D are – if you believe that such propositions that we submit in support of our case are more likely to be true than not true, then you can find in favor of the plaintiff.

What I'm trying to ask is if anybody would have a problem finding in favor of the patient if all they believe was what we said was more likely true than not true? Would anybody hold us to a higher standard than that, that you would need to 80, 90 percent sure? Anybody in the box?

St. Anthony's again objected to the use of percentages to explain the burden of proof. The trial court overruled the objection. Counsel for Mr. Dieser then stated:

I anticipate – You know, I anticipate that if you're on the jury that the Court will give you an instruction at the end that will say things like – to the effect of, your verdict must be for plaintiff if you believe A, B, C is more likely true than not true. And what I'm trying to understand, more likely true, you know, like a scale. You know, more likely true. It could be like this, and I think we will show you more like this.

St. Anthony's objected to counsel's analogy to scales, but the trial court overruled the objection.

23

St. Anthony's asserts that counsel's line of questioning went beyond a limited inquiry into whether the prospective jurors could follow the law. This Court has held that it is preferable "for counsel to ask the members of the panel whether, if the court later instructs them in a specified manner, they have any opinion or conscientious scruples such as would prevent them from returning a verdict accordingly." *Duensing v. Huscher*, 431 S.W.2d 169, 172 (Mo. 1968) (internal quotation omitted). Here, counsel's extended discussion of the burden of proof in terms of percentages went beyond the preferred format of asking whether the jurors had any scruples about the applicable law that would prevent them from returning a verdict in accordance with the given instructions. Nevertheless, counsel's discussion of the burden of proof did not prejudice St. Anthony's.

Although St. Anthony's contends that it was prejudiced because counsel's discussion of the burden of proof created an incorrect impression as to which party had the burden of proof, St. Anthony's subsequently explained to the panel that Mr. Dieser has "the burden of proof in this case, and so [he has] the burden to show you and prove more likely than not that what [he] say[s] occurred here." In fact, St. Anthony's reiterated to the panel several times that Mr. Dieser bore the burden of proof in this case. Moreover, the jury was properly instructed by the trial court as to the burden of proof at the close of the case.[7] Given that the jury was otherwise properly instructed as to the burden of proof

---

[7] Instruction no. 5 reads:

> In these instructions, you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you. The burden is upon the party who relies upon any such proposition to cause you to believe that such proposition is more likely to be true than not true. In determining whether or not you believe any proposition, you must consider only the

during *voir dire* and at the close of evidence, St. Anthony's cannot establish it was prejudiced by Mr. Dieser's counsel's extended discussion of the burden of proof in terms of percentages. *See State v. Anderson*, 79 S.W.3d 420, 443 (Mo. banc 2002); *Joseph v. Elam*, 709 S.W.2d 517, 523 (Mo. App. 1986).

**No Error Resulted from Testimony That St. Anthony's Is a Catholic Institution**

In its third point, St. Anthony's asserts that the trial court erred in overruling its motion for a new trial because Mr. Dieser's testimony about St. Anthony's being a Catholic institution was irrelevant and prejudicial. Again, a trial court's ruling on a motion for new trial will be reversed only upon a showing that the trial court has abused its discretion. *Dodson*, 491 S.W.3d at 552. "A new trial is available only when trial error or misconduct of the prevailing party incited prejudice in the jury." *Id.*

During Mr. Dieser's direct examination, the following colloquy occurred:

Q:    [Mr. Dieser], I wanted to talk about, you know, the impact of this wound on you. I guess I want to ask if it affected you emotionally?

A:    Oh, it has.

Q:    Can you explain that a little bit?

A:    I felt betrayed. I'm a Catholic. St. Anthony's is a Catholic institution.

St. Anthony's then objected on the basis that Mr. Dieser had injected the issue of religion into the case. The trial court overruled the objection. Mr. Dieser went on to testify:

---

evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

A:      I was in a Catholic institution.  I am a Catholic.  I felt deceived.  I have never really found out about what was really going on.  I felt like I didn't have a real participation with my nursing case.  And then as I find out some of these things, I feel like St. Anthony's wants to cast me off to the side and say it's your fault, you deal with it.  Yes, I'm angry.

St. Anthony's asserts that Mr. Dieser's testimony regarding his religious affiliation was neither legally nor logically relevant to any issue in the case and that the sole purpose of Mr. Dieser's testimony was "to prejudice the minds of the jury against [St. Anthony's] and portray it as somehow uncaring and possibly failing in its religious or spiritual mission."  St. Anthony's further asserts that because the only purpose of introducing such evidence was to mislead and prejudice the minds of the jurors, prejudice must be presumed.  St. Anthony's, however, ignores the context in which the testimony arose.

Whether a party was prejudiced by the admission of evidence "depends largely upon the facts and circumstances of the particular case." *McGuire v. Seltsam*, 138 S.W.3d 718, 722 (Mo. banc 2004).  The question is whether the evidence "had any reasonable tendency to influence the verdict of the jury." *Id.*  Mr. Dieser's counsel asked him if the pressure ulcer had affected him emotionally.  In explaining that it had, Mr. Dieser stated that he was Catholic and that St. Anthony's is a Catholic institution.  He went on to express his dissatisfaction with the nursing staff and explained he was angry because he felt like St. Anthony's cast him off and blamed him for the wound. The testimony, therefore, arose in the context of Mr. Dieser explaining the emotional impact of his wound.  It was not elicited to mislead or prejudice the jurors against St. Anthony's because of its religious

26

affiliation.  Accordingly, the trial court did not abuse its discretion in overruling the objection to Mr. Dieser's testimony.

### No Error Resulted from Mr. Dieser's Closing Argument

In its fourth point, St. Anthony's asserts that the trial court erred in permitting Mr. Dieser to make the improper and prejudicial argument during closing that the jurors would be telling the community what constitutes acceptable medical practices.  The trial court has "broad discretion in ruling on the propriety of a closing argument to the jury and will suffer reversal only for an abuse of discretion."  *Moore v. Mo. Pac. R.R. Co.*, 825 S.W.2d 839, 844 (Mo. banc 1992).  The propriety of a statement made during closing argument "must be interpreted in the light of the entire record rather than in isolation." *Kelly ex rel. Kelly v. Jackson*, 798 S.W.2d 699, 704 (Mo. banc 1990).

> During closing argument, counsel for Mr. Dieser made the following statement:
>
> I had thought the hospital admitted that this was a pressure injury sustained in the hospital, a Stage III or Stage IV crater in his backside all the way down to the wound sustained in St. Anthony's Hospital in the course of three days. That, ladies and gentleman, is not acceptable medical care in this community, and that's what your verdict will say.  Your verdict becomes a legal document.

St. Anthony's objected that counsel's statement was an improper "send a message to the community" argument.  The trial court overruled the objection, stating it did not hear the argument that way.

St. Anthony's contends that the argument was an improper appeal to the jury to punish St. Anthony's despite the fact that Mr. Dieser did not request punitive damages.  In support of its argument, St. Anthony's relies on *Smith v. Courter*, 531 S.W.2d 743 (Mo.

27

banc 1976), *overruled on other grounds by Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 21 (Mo. banc 1994).

In *Smith*, the plaintiff argued in closing that the jury could, "through the adequacy of [its] verdict," say to the defendant "and anybody else that reads about it or hears about it – improve the quality of what you sell[.]" *Id.* at 745. The trial court subsequently granted a new trial on grounds that the plaintiff's closing argument injected the issue of punitive damages into the case. *Id.* at 746. On appeal, this Court upheld the trial court's judgment and explained:

> [J]uries cannot be told directly or in effect that they may consider punishment or deterrence as an element of damages and include a sum of money in their verdict so as to punish the defendant or deter others from like conduct unless the pleadings, evidence and instructions warrant the separate submission of punitive damages under the law.

*Id.* at 748.

This case is distinguishable from *Smith*. Mr. Dieser's closing argument did not, in effect, tell the jury it could consider punishment or deterrence as an element of damages. Mr. Dieser did not argue to the jury that a portion of the verdict should be awarded to punish or deter such medical care. Instead, the argument merely encouraged the jury to find the medical care given by St. Anthony's to be unacceptable. Accordingly, because the argument was not an improper appeal to punish St. Anthony's, the trial court did not abuse its discretion in overruling the objection to Mr. Dieser's closing argument.

### The Verdict Was Not Excessive

In its final point, St. Anthony's asserts that the trial court erred in overruling its motion for new trial because the jury's verdict was excessive and should have been

28

remitted. This Court reviews a trial court's determination as to remittitur for an abuse of discretion. *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 249 (Mo. banc 2001), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29, 40 (Mo. banc 2013). This Court is hesitant to interfere with a verdict unless it is manifestly unjust. *Id.* at 249-50. "To determine whether a verdict is manifestly unjust, an appellate court reviews the evidence in the light most favorable to the verdict." *Id.* at 250.

Before a verdict can be deemed excessive, the party must show both that the amount of "the verdict is excessive and that some event occurred at trial that incited the bias and prejudice of the jury." *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 822 (Mo. banc 2000); *see also Callahan*, 863 S.W.2d at 872. "[T]he size of the verdict alone will not establish passion and prejudice by the jury. There must be a showing of some other error at trial." *Callahan*, 863 S.W.2d at 872.

In asserting that it is entitled to remittitur, St. Anthony's contends that the other trial errors alleged in its brief incited the bias and prejudice of the jury and resulted in an excessive verdict. St. Anthony's, however, has not established that error resulted from the issues raised in its prior points on appeal. Where the errors alleged are nonmeritorious "they cannot serve as a predicate for a finding of excessiveness of the verdict." *Giddens*, 29 S.W.3d at 822. Accordingly, St. Anthony's has failed to prove that some trial error occurred that incited the bias and prejudice of the jury and resulted in an excessive verdict.

Moreover, even if some trial error had occurred, St. Anthony's cannot establish that the amount of the verdict is excessive under the facts and circumstances of this case. "[A] court may order remittitur if, after reviewing the evidence in support of the jury's verdict,

29

the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for [the] plaintiff's injury and damages." *Alcorn*, 50 S.W.3d at 249 (internal quotation omitted). Because there "is no exact formula for determining whether an award of compensatory damages is excessive, . . . each case must be considered on its own set of facts." *Id.* at 250.

Here, Mr. Dieser presented evidence that, while being cared for by St. Anthony's, he developed a stage IV pressure ulcer on his backside that extended from the surface of his skin all the way to the bone. The depth and severity of the ulcer required surgery to cut and remove dead tissue from the wound. Following the surgery, the wound required multiple daily dressings. Mr. Dieser's wife did most of the daily dressings, which required her to wear gloves and insert creams and gauze pads into the deep wound. Mr. Dieser testified that the dressings were incredibly painful and required a prescription for lidocaine to numb the area around the wound. Mr. Dieser testified that it was upsetting and embarrassing to have his wife treat the wound on his backside multiple times a day.

Despite their efforts, the wound failed to heal properly and required additional surgery. It was more than a year before the wound completely healed. Mr. Dieser testified that, during the course of the year, he became depressed because caring for the pressure ulcer had taken over his and his family's lives.

Mr. Dieser introduced further evidence that the treatment of his pressure ulcer interfered with his normal daily life. Mr. Dieser testified that the wound required frequent doctor visits in which he would have to bare his backside to multiple people who would poke and prod on a sensitive part of the body. The record also reflects that Mr. Dieser had

30

to purchase or use special equipment to accommodate his injury and had limited mobility, which restricted his ability to mow, fish, and attend his daughter's band concerts.

Finally, the record reflects that the ulcer has lasting effects on Mr. Dieser's life. Mr. Dieser testified that he still experiences pain when he bends and lifts and has to shift from side to side to get comfortable when sitting. Evidence was also introduced that Mr. Dieser is more susceptible to pressure ulcers of increased severity in the future. As a result, Mr. Dieser has developed a fear of hospitals.

St. Anthony's attempts to discredit such evidence by focusing on Mr. Dieser's preexisting health conditions and downplaying the lasting effects of his injury. The jurors, however, are responsible for weighing the evidence and determining the credibility of witnesses. *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 126 (Mo. banc 2015). Accordingly, viewing the evidence in the light most favorable to the verdict, the compensatory damages award was not excessive; therefore, the trial court did not abuse its discretion by overruling the motion for remittitur of damages.

## Conclusion

Mr. Dieser was neither entitled to post-judgment interest under section 408.040.1, nor did the trial court's application of section 538.300 violate Mr. Dieser's constitutional rights to equal protection, open courts, or a trial by jury. Moreover, St. Anthony's cannot establish that reversible error resulted from the questioning of its expert about "never events," counsel's discussion of the burden of proof during *voir dire*, Mr. Dieser's testimony that St. Anthony's is a Catholic institution, or counsel's closing argument. Likewise, because the verdict was not excessive, the trial court did not abuse its discretion

31

in overruling the motion for remittitur of damages. Accordingly, this Court affirms the trial court's judgment.

_____
PATRICIA BRECKENRIDGE, CHIEF JUSTICE

All concur.