

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **KEVIN RHODES,** | ) |
| | ) |
| *Appellant-Respondent,* | ) |
| | ) **WD86331** |
| | ) |
| | ) **Related Case: WD86503** |
| **v.** | ) |
| | ) **OPINION FILED:** |
| **MISSOURI HIGHWAYS AND** | ) **FEBRUARY 11, 2025** |
| **TRANSPORTATION COMMISSION,** | ) |
| | ) |
| *Respondent-Appellant.* | ) |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Dale Youngs, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,
Karen King Mitchell, Judge, Alisha D. O'Hara, Special Judge**

The Missouri Highways and Transportation Commission ("MHTC") appeals the circuit court's denial of its motion for judgment notwithstanding the verdict ("JNOV") following a jury verdict in favor of Kevin Rhodes on his claims of hostile work environment and retaliation under the Missouri Human Rights Act ("MHRA"). On appeal, MHTC contends the circuit court erred in denying the motion for JNOV because, 1) Rhodes did not make a submissible case on his retaliation claim, in that he did not

present substantial evidence on causation; 2) Rhodes did not make a submissible case on his hostile work environment claim, in that he did not present substantial evidence on the third element; 3) Rhodes did not make a submissible case on his hostile work environment claim, in that he did not present substantial evidence on the fourth element; 4) Rhodes did not make a submissible case on his punitive damages claim, in that he did not present clear and convincing evidence that MHTC's conduct was outrageous because of evil motive or reckless indifference; 5) Instruction No. 8 amounted to evident and obvious error that misdirected the jury so as to affect its verdict on Rhode's retaliation claim, in that Instruction No. 8 contained alternatives in paragraph first that could not possibly serve as the requisite "adverse action," and 6) the circuit court erred in denying MHTC's request to allocate the amount of damages awarded for each category of damages, because this denial left the judgment vague and uncertain, in that the amount of punitive damages is unknowable, which prevents application of Section 537.675.3.[1]

Rhodes cross-appeals. In his cross-appeal, Rhodes contends the circuit court erred in capping Rhodes's damages based on Section 213.111.4, arguing Section 213.111.4 is unconstitutional in that it, 1) violates art. 1 § 22(a) of the Missouri Constitution by impairing Rhodes's right to a jury trial; 2) violates the mandate for separation of powers in article II, § 1 of the Missouri Constitution by impermissibly interfering with the judiciary's role of determining the damages sustained by victims of discrimination; 3) violates the equal protection clauses of the Missouri Constitution (article I, § 2) and the

---

[1]All statutory references are to the Revised Statutes of Missouri, as updated through 2020, unless otherwise noted.

U.S. Constitution (14th amendment) by denying him actual damages for his injuries; 4) violates the due process clauses of the Missouri Constitution (article I, § 10) and the United States Constitution (Amend. XIV, § 1) by depriving Rhodes of property without due process of law, 5) violates the open courts provision, article I § 14, of the Missouri Constitution, and 6) is a special law in violation of article III, §§ 40-42 of the Missouri Constitution.

As discussed more fully below, we find that Rhodes's challenges to the constitutional validity of Section 213.111.4 invoke the exclusive appellate jurisdiction of the Missouri Supreme Court pursuant to Article V, § 3 of the Missouri Constitution. We, therefore, lack jurisdiction over MHTC's appeal and Rhodes's cross-appeal, and order the case transferred to the Missouri Supreme Court pursuant to Article V, § 11 of the Missouri Constitution.

**Background and Procedural Information**

The underlying facts in this case are not essential to our ruling. Rhode's explanation of the trial evidence is as follows. In brief, in the light most favorable to the jury verdict, Rhodes began working for MHTC in 2001. In June 2019, Rhodes filed grievances regarding his supervisor. One day after he filed one such grievance, Rhodes was suspended. Rhodes then became the subject of false or manufactured reports accusing him of misconduct. In December 2019, after filing a charge of discrimination with the Missouri Commission on Human Rights, Rhodes's employment was terminated.

On July 8, 2020, Rhodes filed a petition in the circuit court alleging violations of the MHRA, Section 213.010, *et seq.* The circuit court granted summary judgment in

3

MHTC's favor on Rhodes's claims for age and race discrimination. The remaining claims were tried to a jury in late January/early February 2023. The jury found in favor of MHTC on Rhodes's claim of sex discrimination, but found in favor of Rhodes on his claims of retaliation and hostile work environment. The jury assessed damages as follows: $24,997 for back pay; $24,997 for past economic losses (excluding back pay); $21,000 for future economic losses; $180,000 for non-economic losses; and $1,700,000 for punitive damages.

On April 11, 2023, the circuit court entered judgment on the jury verdicts. In its Judgment, the circuit court applied the statutory damages cap in Section 213.111.4 to award Rhodes $24,997 for back pay plus $500,000 total for past economic losses (excluding back pay), future economic losses, non-economic losses, and punitive damages. The court denied MHTC's request to allocate the amount of damages awarded for each category of damages (other than back pay) after application of the damages cap.

MHTC filed a "Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for a New Trial." The circuit court denied the motion on June 1, 2023, and MHTC appealed to this court. On August 21, 2023, Rhodes sought leave to file a cross-appeal challenging the constitutionality of the damages cap in Section 213.111.4. We granted leave, and consolidated Rhodes's cross-appeal with MHTC's appeal.

MHTC moved this court to transfer the entire matter to the Missouri Supreme Court based on Rhodes's constitutional claims in his cross-appeal. MHTC's motion was taken with the case. Rhodes states that his cross-appeal, which raises the constitutionality

4

of Section 213.111.4, is within the exclusive jurisdiction of the Missouri Supreme Court, but that we have jurisdiction to address MHTC's appeal.

## MHTC's Motion to Transfer

We first address MHTC's "Motion for Jurisdictional Transfer to Supreme Court of Missouri" so as to determine the extent we have jurisdiction over the issues raised on appeal. *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 427 (Mo. 2016). MHTC does not dispute that Rhodes's constitutional claims were preserved. Both MHTC and Rhodes contend the Supreme Court of Missouri has exclusive appellate jurisdiction over Rhodes's cross-appeal because it challenges the constitutionality of a Missouri statute. Neither party contends Rhodes's constitutional claims are merely colorable.

> Article V, § 3 of the Missouri Constitution provides that the Missouri Supreme Court has 'exclusive appellate jurisdiction in all cases involving the validity of a ... statute ... of this state.' The Supreme Court's 'exclusive appellate jurisdiction is invoked when a party asserts that a state statute directly violates the constitution either facially or as applied.' *Dieser*, 498 S.W.3d at 427. "If any point on appeal involves such [a] question, the entire case must be transferred to the Supreme Court." *Accident Fund Ins. Co. v. Casey*, 536 S.W.3d 360, 364 (Mo. App. W.D. 2017) (citation omitted).

> The Supreme Court's "exclusive appellate jurisdiction is not invoked," however, 'simply because a case involves a constitutional issue.' *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. 2015). 'To invoke the [Supreme] Court's exclusive jurisdiction, the constitutional issue must be real and substantial, not merely colorable.' *Matter of Care and Treatment of Bradley v. State*, 554 S.W.3d 440, 448-49 (Mo. App. W.D. 2018) (citations and internal quotation marks omitted); *accord*, *Boeving v. Kander*, 496 S.W.3d 498, 503 (Mo. 2016); *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 270 (Mo. 2014).

> In determining whether a constitutional claim is real and substantial, we make a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt

> and reasonable room for disagreement. If the initial inquiry discloses the claim is so legally or factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable.

*McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 404 (Mo. App. W.D. 2004) (citations omitted). "In the context of the 'not merely colorable' test, the word 'colorable' means feigned, fictitious or counterfeit, rather than plausible." *Dieser*, 498 S.W.3d at 429 (quoting *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 52 (Mo. 1999)); *Snodgrass v. Martin & Bayley, Inc.*, No. ED87304, 2006 WL 1735246, at *3 (Mo. App. E.D. June 27, 2006) (same).

> "One clear indication that a constitutional challenge is real and substantial and made in good faith is that the challenge is one of first impression with th[e] [Supreme] Court." *Dieser*, 498 S.W.3d at 429 (quoting *Rodriguez*, 996 S.W.2d at 52); *accord Mayes*, 430 S.W.3d at 270

*Donaldson v. Missouri State Bd. of Registration for Healing Arts*, 623 S.W.3d 152, 156 (Mo. App. 2020).

In Rhodes's first point on cross-appeal, he contends the circuit court erred in capping Rhodes's damages based on Section 231.111.4, arguing Section 231.111.4 is unconstitutional because it impairs his right to a jury trial.

In 2017, the Missouri legislature passed Senate Bill 43, which amended the MHRA. *Dixson v. Missouri Dept. of Corrections*, 586 S.W.3d 816, 825 (Mo. App. 2019). Senate Bill 43's damage cap is codified in Section 213.111.4, which provides:

> 4. The sum of the amount of actual damages, including damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and punitive damages awarded under this section shall not exceed for each complaining party:

> (1) Actual back pay and interest on back pay; and

6

(2)(a) In the case of a respondent who has more than five and fewer than one hundred one employees in each of twenty or more calendar weeks in the current or preceding calendar year, fifty thousand dollars;

(b) In the case of a respondent who has more than one hundred and fewer than two hundred one employees in each of twenty or more calendar weeks in the current or preceding calendar year, one hundred thousand dollars;

(c) In the case of a respondent who has more than two hundred and fewer than five hundred one employees in each of twenty or more calendar weeks in the current or preceding calendar year, two hundred thousand dollars; or

(d) In the case of a respondent who has more than five hundred employees in each of twenty or more calendar weeks in the current or preceding calendar year, five hundred thousand dollars.

Citing *Watts v. Lester E. Cox Medical Centers*, 376 S.W.3d 633, 637 (Mo banc 2012), Rhodes argues that Section 213.111.4's damages cap, which caps actual as well as punitive damages, implicates his right to trial by jury under article I, § 22(a) because his claims fall within the "right of a trial by jury as heretofore enjoyed," and because Rhodes's right to a trial by jury cannot "remain inviolate" when a statutory cap limits damages. Rhodes contends that *Diehl v. O'Malley*, 95 S.W.3d 82, 85 (Mo. banc 2003), which discussed that "[a]n action for damages under the Missouri Human Rights Act seeks redress for an intentional wrong done to a person … and is a modern variant of claims for relief, called forms of action, known to the courts in 1820 for redress of wrongs done to a person," confirms that his claims fall within the "right of a trial by jury as heretofore enjoyed."

Citing *Scott v. Blue Springs Ford Sales, Inc.*, 176 S.W.3d 140, 142 (Mo. banc 2005), Rhodes argues that, there is no question that actual damages were recognized

7

under the common law in 1820, and juries could assess punitive damages for common law tort claims as well. Rhodes quotes *All Star Awards & Specialties, Inc. v. HALO Branded Solutions, Inc.*, 642 S.W.3d 281, 287 (Mo. banc 2022), which states that "statutory caps on punitive damages violate the right to a trial by jury as provided by article I, section 22(a) if the litigant's common law cause of action existed in 1820 and the claim would have supported a finding of punitive damages in 1820," or if the "common law cause of action is 'analogous' to a claim that existed in 1820 and the claim would have supported a finding of punitive damages in 1820." Rhodes argues that, if the statutory cap changes the common law right to a jury determination of damages, the right to trial by jury does not "remain inviolate," and it is undeniable that Section 213.111.4 changes the common law right to a jury determination of damages. Rhodes concludes that, given the law as applied to the facts in his case, Section 213.111.4 is clearly and undoubtedly unconstitutional.

MHTC does not address Rhodes's reliance on *Diehl*, but argues pursuant to *State ex rel. Church & Dwight Co., Inc. v. Collins*, 543 S.W.3d 22 (Mo. banc 2018), "the MHRA 'supersedes and displaces' related common law claims," rendering Rhodes's claims statutorily created causes of action which entitle the legislature to choose all remedies for those causes of action. MHTC then argues that the cases cited by Rhodes in support of his arguments are inapplicable and distinguishable because they involved common law claims, and not statutory claims.

*Church* involved a plaintiff whose MHRA claims were time barred, so she attempted to sue under common law claims of negligence and wrongful discharge. *Id.* at

8

25. The Missouri Supreme Court discussed that "a statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelopes the remedies provided by common law." *Id.* at 27. The Court concluded that, because the MHRA provides for "a broad range of remedies including injunctive relief, actual damages, punitive damages, court costs, and attorney fees," the plaintiff was "not entitled to any other remedies for common law claims of negligence or wrongful discharge." *Id.* at 28. Further, that "[b]ecause the MHRA fully provides for all remedies available at common law, [Plaintiff's] common law claims of negligence and wrongful discharge are fully encompassed and comprehended by the MHRA." *Id.* On those facts, the Court found "the MHRA supersedes and displaces [Plaintiff's] common law claims[.]"

Rhodes argues that juries were not limited in 1820 in the amount of damages it could award, and statutes that attempt to cap damages in causes of action that would have existed in 1820 are unconstitutional because they violate the guaranteed right to a trial by jury.

"The fact that [Rhodes] raises issues of first impression in Missouri indicates that he has raised 'real and substantial' constitutional claims." *Donaldson*, 623 S.W.3d at 159 (quoting *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260 (Mo. banc 2014)). Rhodes's claims and arguments, and MHTC's arguments in opposition, "involve fair doubt and reasonable room for disagreement, and they do not appear so legally or factually insubstantial that we can say they are merely colorable." *Donaldson*, 623

9

S.W.3d at 159. While the Missouri Supreme Court may have addressed similar constitutional claims regarding other statutes, where there is a genuine, good faith disagreement as to how those decisions apply to the constitutionality of Section 213.111.4, we cannot conclude the issues raised by Rhodes are merely colorable. *See Mayes*, 430 S.W.3d at 270.

## Conclusion

Rhodes's constitutional claims invoke the Missouri Supreme Court's exclusive appellate jurisdiction under Article V, § 3 of the Missouri Constitution. Accordingly, we lack jurisdiction over this appeal, and the case must be transferred to the Missouri Supreme Court. MHTC's "Motion for Jurisdictional Transfer to Supreme Court of Missouri" is granted, and MHTC's appeal, along with Rhodes's cross-appeal, is ordered transferred pursuant to Article V, § 11 of the Missouri Constitution.[2]

_____
Anthony Rex Gabbert,
Chief Judge

All concur.

---

[2] While MHTC's direct appeal raises no issues invoking the exclusive jurisdiction of the Missouri Supreme Court, the Court has previously stated that, where "one of the issues involves the validity of a statute, the Court has jurisdiction of the entire case." *Lester v. Sayles*, 850 S.W.2d 858, 861 (Mo. banc 1993). Further, if the Missouri Supreme Court were to conclude that Section 213.111.4 is unconstitutional, MHTC's sixth point on appeal (which contends the circuit court erred in denying the MHTC's request to allocate the amount of damages awarded for each category of damages when it applied the damage cap under Section 213.111.4) would then be moot.