

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

BLAKE H. DONALDSON, D.O.,    )
                    **Appellant,**  )
                                  )
v.                              )    WD83217
                                  )
MISSOURI STATE BOARD OF    )    **FILED: July 7, 2020**
REGISTRATION FOR THE      )
HEALING ARTS,           )
                  **Respondent.**  )

### Appeal from the Circuit Court of Cole County
### The Honorable Patricia S. Joyce, Judge

### Before Division Two: Mark D. Pfeiffer, P.J., and
### Alok Ahuja and Edward R. Ardini, Jr., JJ.

Dr. Blake Donaldson filed a petition in the Circuit Court of Cole County, seeking judicial review of a decision rendered by the Administrative Hearing Commission (the "AHC" or "Commission") and by the State Board of Registration for the Healing Arts (the "Board") in a license-discipline proceeding. The administrative proceeding resulted in the emergency suspension, and ultimately the revocation, of Dr. Donaldson's medical license. The circuit court upheld the administrative agencies' decision. On appeal, Dr. Donaldson challenges the agencies' disciplinary decision on multiple procedural and substantive grounds. Among other things, he challenges the constitutionality of § 334.102,[1] which

---

[1]     Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated through the 2019 Cumulative Supplement.

provides for the emergency suspension of licensees without a hearing, and for expedited proceedings thereafter to determine if cause for discipline exists.

We conclude that Dr. Donaldson's challenges to the constitutional validity of § 334.102 invoke the exclusive appellate jurisdiction of the Missouri Supreme Court pursuant to Article V, § 3 of the Missouri Constitution. We accordingly lack jurisdiction over Dr. Donaldson's appeal, and order the case transferred to the Missouri Supreme Court pursuant to Article V, § 11 of the Missouri Constitution.

**Background**

From 1995 to December 2017, Dr. Donaldson was licensed by the State as a physician and surgeon. During part of this time, he owned and operated Primary Care North Kansas City, LLC, in Parkville.

On November 27, 2017, the State Board of Registration for the Healing Arts filed with the Administrative Hearing Commission a complaint and motion for emergency suspension of Dr. Donaldson's medical license. The Board alleged that from May 2012 through February 2016, Dr. Donaldson engaged in various sexual acts with one of his patients, both in his medical office, and at his home. The Board alleged that the patient at issue was a minor when some of the sexual acts occurred. Dr. Donaldson was served with the Board's complaint and motion for emergency suspension on the same day it was filed.

On December 5, 2017, acting pursuant to § 334.102 and without conducting a hearing, the AHC issued an order finding probable cause that Dr. Donaldson engaged in sexual conduct with a patient and engaged in sexual misconduct with a minor, and that such conduct was harmful to the mental and physical health of the patient. As a result, the Commission immediately suspended Dr. Donaldson's medical license pending the final outcome of the disciplinary proceedings.

Dr. Donaldson filed a Petition in the Circuit Court of Cole County on December 12, 2017, seeking injunctive and writ relief to prevent the Board and

2

Commission from enforcing the emergency suspension of his license (No. 17AC-CC00617). The circuit court dismissed the action. It held that Dr. Donaldson had failed to exhaust his administrative remedies, and that his claims could be addressed in a judicial review proceeding brought under § 536.100 of the Missouri Administrative Procedure Act, after issuance of a final administrative decision.

The Administrative Hearing Commission held a hearing on February 22-23, 2018, in which Dr. Donaldson and his counsel participated. Dr. Donaldson had requested a stay of proceedings, and a continuance of the hearing date, to permit him to conduct further discovery, and had agreed to remain subject to the emergency suspension order in the interim. The AHC denied the requested continuance on the basis that it "d[id] not have the authority to extend the emergency suspension beyond the time frame under § 334.102." Dr. Donaldson asserts that a continuance would have permitted him to obtain records from third parties (including records concerning the activation and de-activation of his office's alarm system, and his work schedule at a local hospital) which would have disproven some of the sex abuse allegations. Dr. Donaldson later obtained some of the third-party records, but the Commission, the Board, and the circuit court refused to consider them.

On March 15, 2018, the AHC entered its decision finding cause for discipline of Dr. Donaldson's license under § 334.100.2. The Commission found that Dr. Donaldson engaged in sexual conduct with a patient, knowing that the individual was his patient and was sixteen years of age. The Commission also found that Dr. Donaldson engaged in additional sexual acts with the same patient when the patient was seventeen and eighteen years old.

The Board held a hearing to determine the appropriate discipline on August 3, 2018. Dr. Donaldson appeared with counsel. On September 25, 2018, the Board

3

issued its decision and disciplinary order revoking Dr. Donaldson's medical license, with leave to apply for reinstatement after seven years.

On October 25, 2018, Dr. Donaldson filed a petition for judicial review in the Circuit Court of Cole County. (Pursuant to § 621.145, the AHC's finding of cause for discipline, and the Board's decision imposing discipline, are treated as a single decision for purposes of judicial review.) The circuit court rejected Dr. Donaldson's challenges and upheld the administrative decision. Dr. Donaldson appeals.

## Discussion

Before reaching the merits of Dr. Donaldson's claims, we must first determine whether we have jurisdiction over his appeal. *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 427 (Mo. 2016).

Dr. Donaldson asserts nine Points on appeal. In Points III and IV, he contends that § 334.102 "on its face violate due process." In Point III, he argues that § 334.102's emergency suspension provisions violate due process because the statute does not require a pre-suspension hearing, and does not authorize judicial review of an emergency suspension order until all proceedings before the AHC and the Board are concluded. In Point IV, Dr. Donaldson argues that the provisions of § 334.102.4(1), which require that a final hearing concerning cause for discipline be conducted on an expedited basis following entry of an emergency suspension, are unconstitutional because they afford a licensee an insufficient opportunity to investigate and conduct discovery to respond to the Board's allegations of misconduct. The parties agree that Dr. Donaldson properly preserved his constitutional claims in the circuit court.

Article V, § 3 of the Missouri Constitution provides that the Missouri Supreme Court has "exclusive appellate jurisdiction in all cases involving the validity of a . . . statute . . . of this state." The Supreme Court's "exclusive appellate jurisdiction is invoked when a party asserts that a state statute directly violates the

4

constitution either facially or as applied." *Dieser*, 498 S.W.3d at 427. "'If any point on appeal involves such [a] question, the entire case must be transferred to the Supreme Court.'" *Accident Fund Ins. Co. v. Casey*, 536 S.W.3d 360, 364 (Mo. App. W.D. 2017) (citation omitted).

The Supreme Court's "exclusive appellate jurisdiction is not invoked," however, "simply because a case involves a constitutional issue." *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. 2015). "To invoke the [Supreme] Court's exclusive jurisdiction, the constitutional issue must be real and substantial, not merely colorable." *Matter of Care and Treatment of Bradley v. State*, 554 S.W.3d 440, 448-49 (Mo. App. W.D. 2018) (citations and internal quotation marks omitted); *accord*, *Boeving v. Kander*, 496 S.W.3d 498, 503 (Mo. 2016); *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 270 (Mo. 2014).

> In determining whether a constitutional claim is real and substantial, we make a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt and reasonable room for disagreement. If the initial inquiry discloses the claim is so legally or factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable.

*McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 404 (Mo. App. W.D. 2004) (citations omitted). "'In the context of the 'not merely colorable' test, the word 'colorable' means feigned, fictitious or counterfeit, rather than plausible.'" *Dieser*, 498 S.W.3d at 429 (quoting *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 52 (Mo. 1999)); *Snodgrass v. Martin & Bayley, Inc.*, No. ED87304, 2006 WL 1735246, at *3 (Mo. App. E.D. June 27, 2006) (same).

"'One clear indication that a constitutional challenge is real and substantial and made in good faith is that the challenge is one of first impression with th[e] [Supreme] Court.'" *Dieser*, 498 S.W.3d at 429 (quoting *Rodriguez*, 996 S.W.2d at 52); *accord Mayes*, 430 S.W.3d at 270 ("Because this Court has not addressed these

5

issues in the context of the current version of section 538.225, the plaintiffs present real and substantial constitutional questions.").

Dr. Donaldson's constitutional claims are "real and substantial," and not "merely colorable." He argues that § 334.102's emergency suspension provision violates due process because it denies a licensee an opportunity to be heard in a meaningful time and manner concerning an emergency suspension ordered by the AHC. He also argues that the statute denies licensees due process because it requires that, following an emergency suspension order, a final Commission hearing on cause for discipline must be heard on an expedited schedule, thereby denying licensees an adequate opportunity for investigation and discovery.

Dr. Donaldson's arguments raise substantial challenges to the validity of § 334.102. Under the statute, the Board may apply to the AHC for emergency suspension of a licensee for certain enumerated causes. § 334.102.1. The Board's complaint must "alleg[e] the facts in support of the board's request for an emergency suspension" and such facts must be supported by affidavits and "existing certified court records." § 334.102.2. Within one business day of the filing of the complaint, the AHC must return a "service packet" to the Board (consisting of the Board's complaint and any affidavits or records filed with the AHC), which the Board must serve on the licensee within twenty-four hours. *Id.* The licensee may file counter-affidavits or documents with the Commission. *Id.*

Within five days of the Board's filing of the complaint, the AHC must determine if probable cause exists that the licensee has committed any of the acts which would justify an emergency suspension. § 334.102.3. "If the administrative hearing commission finds that there is probable cause, the administrative hearing commission shall enter the order requested by the board," which becomes effective when it is served on the licensee. *Id.*

When an emergency suspension order is issued, the AHC "shall hold a hearing . . . to determine if cause for discipline exists" within forty-five days of the Board's filing of the complaint, unless continuances are requested and granted, in which event the hearing must be held no later than 120 days after the Board's initial filing. § 334.102.4(1). If the AHC finds cause for discipline it must issue findings of fact and conclusions of law and order that the emergency suspension remain in place pending the Board's disciplinary hearing. § 334.102.4(3). "The board shall hold a hearing following the certification of the record by the administrative hearing commission and may impose any discipline otherwise authorized by law." *Id.*

The United States and Missouri Constitutions "prohibit the taking of life, liberty, or property without due process of law." *Coyler v. State Bd. of Registration for Healing Arts*, 257 S.W.3d 139, 144 (Mo. App. W.D. 2008) (citing U.S. Const. Amend. XIV, § I; Mo. Const. Art. I, § 10). A license to practice medicine is "protected by both procedural and substantive due process." *Id.* (citation omitted); *see Stone v. Mo. Dep't of Health and Senior Servs.*, 350 S.W.3d 14, 27 (Mo. 2011) ("A person has a property right in a license that requires sufficient procedural due process before the license can be 'impaired, suspended, or revoked.'" (citation omitted)).

"Under both the federal and state constitutions, '[t]he fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."'" *Jamison v. State Dep't of Social Servs.*, 218 S.W.3d 399, 408 (Mo. 2007) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (other citations omitted)). "The Due Process Clauses require that in order to deprive a person of a property interest, [they] must receive notice and an opportunity for a hearing appropriate to the nature of a case." *Moore v. Bd. of Educ. of Fulton Pub. Sch. No. 58*, 836 S.W.2d 943, 947 (Mo. 1992)).

7

The Missouri Supreme Court has recognized "the well-settled principle that if the State feasibly can provide a hearing before deprivation of a protected interest, it generally must do so in order to minimize 'substantively unfair or mistaken deprivations.'" *Jamison*, 218 S.W.3d at 408 (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (other citations omitted)). Although due process principles frequently require a hearing before a person may be deprived of their property, the Missouri Supreme Court has recognized that a pre-deprivation hearing is not required in all instances, because "[d]ue process is a flexible concept." *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 230 (Mo. 1982) (citations omitted); *accord, City of Kansas City v. Jordan*, 174 S.W.3d 25, 43 (Mo. App. W.D. 2005) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)).

Besides affording affected persons a right to a hearing at a meaningful time, due process principles also require that interested parties have a fair opportunity to protect their interests in such a hearing. "In an administrative proceeding, due process is provided by affording parties the opportunity to be heard in a meaningful manner. The parties must have knowledge of the claims of his or her opponent, have a full opportunity to be heard, and to defend, enforce and protect his or her rights." *Wunderlich v. Jensen*, 496 S.W.3d 522, 528-29 (Mo. App. W.D. 2016) (quoting *Scrivener Oil Co. v. Crider*, 304 S.W.3d 261, 271-72 (Mo. App. S.D. 2010)).

In this case, an emergency suspension of Dr. Donaldson's license to practice medicine was entered without any pre-suspension hearing, based on a finding that there was probable cause to believe that he had committed serious acts of misconduct. While the statute permits licensees to file affidavits and evidence in response to the Board's request for an emergency suspension, the statute apparently does not require the AHC to delay its decision on the Board's request to permit a licensee to submit such opposing evidence. A hearing before the Commission was required to be held no later than 120 days after the Board's initial

8

filing, to determine whether cause for discipline existed. Dr. Donaldson argues that this expedited timetable for the final hearing on cause for discipline denied him a meaningful opportunity to conduct discovery and investigation to enable him to defend against the Board's allegations, even though the Board had an unlimited amount of time to develop its own case before filing its complaint. Dr. Donaldson also complains that, after the Commission found cause for discipline, further proceedings were required in front of the Board (to determine what discipline would be imposed) before the administrative procedure concluded. It does not appear that the Board was subject to any specific deadline within which it was required to issue its final disciplinary decision. All the while, the emergency suspension order remained in effect, and Dr. Donaldson was denied any opportunity to obtain judicial review (because the administrative proceedings had not yet concluded).

Neither the Missouri Supreme Court nor this Court has addressed the validity of § 334.102's procedures for emergency license suspensions, and for imposing final discipline following an emergency suspension, under due process principles.[2] Nor does it appear that any Missouri appellate court has addressed similar issues with respect to any analogous statutory framework.[3] Other

---

[2] Citing *Farm Bureau Town & Country Ins. Co. v. Angoff*, 909 S.W.2d 348 (Mo. 1995), the agencies contend that the Missouri Supreme Court has held that it is generally appropriate to require a regulated party to exhaust administrative remedies before asserting a constitutional challenge to a statute. But in *Farm Bureau* – unlike here – the administrative agency had not taken any interim, emergency action which significantly affected the regulated party's interests during the pendency of the administrative proceedings. Thus in *Farm Bureau*, the regulated party's interests had not yet been affected by the ongoing administrative proceeding, and that proceeding might ultimately have concluded in the regulated entity's favor. In those circumstances, the Supreme Court held that – until the administrative proceeding concluded – "it is impossible to know if a subsisting justiciable controversy exists between the agency and the party seeking declaratory relief." 909 S.W.2d at 353. In this case, by contrast, the AHC denied Dr. Donaldson his right to practice medicine on an emergency basis, while administrative proceedings continued. There was nothing "hypothetical or speculative" concerning his challenge to the emergency suspension. *Id.* at 352.

[3] Section 335.066 provides a nearly identical procedure for the emergency suspension of a nursing license pending disciplinary proceedings. Neither the Missouri

9

jurisdictions in analogous circumstances have recognized that "emergency suspension [of a professional license] pending a full hearing did not, in and of itself, violate [a licensee]'s due process rights." *Gershenfeld v. Justices of the Supreme Court of Pa.*, 641 F. Supp. 1419, 1424 (E.D. Pa. 1986). "The guarantee of a prompt dispositional postdeprivation hearing, however, is a critical factor in determining the constitutional validity of the previously invoked interim or temporary deprivation processes." *Id.* (collecting cases).

The fact that Dr. Donaldson raises issues of first impression in Missouri indicates that he has raised "real and substantial" constitutional claims. *Mayes*, 430 S.W.3d at 270; *see also In re Care and Treatment of Edwards*, No. ED 78858, 2002 WL 171307 (Mo. App. E.D. Feb. 5, 2002) (transferring appeal to Missouri Supreme Court where appellant argued that sexually violent predator civil commitment statute violated his due process rights, and "the constitutional challenge to Missouri's sexually violent predator statute . . . raised by Edwards has not been addressed by the Missouri courts"). The resolution of due process challenges depends on the particular interests at stake, and the particular procedures afforded, under a specific statute; it is significant that the Missouri Supreme Court has not addressed due process challenges to this or an analogous statutory scheme. Dr. Donaldson's claims, as presented, involve fair doubt and reasonable room for disagreement, and they do not appear so legally or factually insubstantial that we can say they are merely colorable.

We recognize that Dr. Donaldson's constitutional challenge to the emergency suspension order (Point III) is arguably moot, because the emergency suspension order was effectively superseded by the final disciplinary order entered by the Commission and Board after hearings before both agencies. It appears, however,

Supreme Court nor this Court has addressed a due process challenge to the nursing provisions, either.

10

that the entry of an emergency suspension was a prerequisite to the Commission and Board using the expedited procedures specified in § 334.102.4 to finally resolve the disciplinary proceedings. Section 334.102.4 plainly contemplates that an emergency suspension has previously been entered, since it refers to the AHC either terminating the emergency suspension, or continuing the emergency suspension "in full force and effect," depending on whether the Commission finds cause for discipline after hearing. *See* § 334.102.4(2), (3). Therefore, it appears that the final disciplinary order entered by the agencies was dependent on the existence of the prior emergency suspension.

Even if Point III is moot, that would not affect the separate constitutional argument Dr. Donaldson makes in Point IV. In addition, given that Dr. Donaldson was denied any opportunity to obtain judicial review of the emergency suspension order pending conclusion of the administrative proceedings, it is at least arguable that the Supreme Court would consider the merits of his challenge to the emergency suspension order under the public-interest exception to the mootness doctrine. Under that exception, the Supreme Court may exercise its discretion to decide the merits of a case, despite its mootness, "'whenever a case presents an issue that (1) is of general public interest and importance, (2) will recur, and (3) will evade appellate review in future live controversies.'" *State ex rel. Mo. Pub. Defender Comm'n v. Waters*, 370 S.W.3d 592, 603 (Mo. 2012) (quoting *Gurley v. Mo. Bd. of Private Investigator Exam'rs*, 361 S.W.3d 406 (Mo. 2012)). This exception allows the Court to "decide an issue even though it may appear to be moot if there is some legal principle at stake not previously ruled as to which a judicial declaration can and should be made for future guidance." *Id.* (citations and internal quotation marks omitted). If Dr. Donaldson is prohibited from challenging the emergency suspension order entered against him, it is unclear how any future litigant would be better situated to raise such a challenge in a live controversy.

11

## Conclusion

Dr. Donaldson's constitutional claims invoke the Missouri Supreme Court's exclusive appellate jurisdiction under Article V, § 3 of the Missouri Constitution. This appeal is accordingly ordered to be transferred to the Supreme Court pursuant to Article V, § 11 of the Missouri Constitution.

Alok Ahuja, Judge

All concur.

12